UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

RABBI NAFTALI HOROWITZ,                                               :
                                                                      :    Case No.: 7:26-cv-00504-JGLC
                              Plaintiff,                              :
                                                                      :
                    -against-                                         :
                                                                      :
TOWN OF CLARKSTOWN, N.Y., TOWN COUNCIL                                :
OF THE TOWN OF CLARKSTOWN, N.Y., ZONING                               :
BOARD OF APPEALS OF THE TOWN OF                                       :
CLARKSTOWN, N.Y.,                                                     :
                                                                      :
                              Defendants,                             :
---------------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF CLARKSTOWN DEFENDANTS'
MOTION TO DISMISS**



Wilson, Elser, Moskowitz, Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, NY 10604
Tel: (914) 323-7000

**TABLE OF CONTENTS**

**Page**

Introduction ..................................................................................................... 1

Preliminary Statement ..................................................................................... 1

Relevant Facts and Procedural History ........................................................... 2

    Plaintiff's Area Variance Application ......................................................... 2

    Local Law 5 of 2016 ................................................................................... 6

    The Instant Action ...................................................................................... 6

Argument .......................................................................................................... 7

I.     PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE AND THEREFORE MUST BE DISMISSED ..................................................................... 9

    A.    Plaintiff's Claims Are Not Ripe For Judicial Review Because the ZBA Took No Final Position on Application of the Law to Plaintiff's Property and Indicated It Would Consider a Modified Application ......................................................................................... 9

    B.    Plaintiff Fails to Show that Submission of a Modified Application Would Be Futile ................................................................................ 12

    C.    Plaintiff Lacks Standing To Seek Declaratory or Injunctive Relief ......... 12

II.    PLAINTIFF DOES NOT PLAUSIBLY ALLEGE VIABLE RLUIPA CLAIMS .......................................................................................... 144

    A.    Plaintiff Fails To State A "Substantial Burden" Claim Under 42 U.S.C. § 2000cc(a) .................................................................................. 14

    B.    Plaintiff Fails To State A RLUIPA "Nondiscrimination" Claim Under 42 U.S.C. § 2000cc(b)(2) ................................................................ 16

    C.    Plaintiff Fails To State An "Exclusion and Limits: Unreasonable Limitation" Claim Under 42 U.S.C. § 2000cc(b)(3)(B) ........................... 19

        1.    Plaintiff Fails to State an Unreasonable Limitations Claim Based on the Denial of His Application. .................................... 20

        2.    Plaintiff Lacks Standing to Challenge Local Law 5 under the "Unreasonable Limitations" Provision ..................................... 211

3.    Plaintiff's Facial Challenge to Local Law 5 Fails To State a Claim ........................................................................... 22

III.    PLAINTIFF'S FREE EXERCISE CLAIM FAILS ............................................. 23

IV.    PLAINTIFF'S FREEDOM OF ASSOCIATION CLAIM FAILS ........................ 23

V.    PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS .................................. 266

VI.    THE ARTICLE 78 CLAIM IS NOT PROPERLY BEFORE THIS COURT ............................................................................................................ 27

Conclusion ............................................................................................................... 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackridge v. Aramark Corr. Food Servs.*,
  2018 U.S. Dist. LEXIS 54733 (S.D.N.Y. Mar. 30, 2018) ........................................................17

*Adhi Parasakthi Charitable v. Twp. Of W. Pikeland*,
  721 F. Supp. 2d 361 (E.D.Pa. 2010) ....................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................7, 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................................8, 27

*Birmingham v. Ogden*,
  70 F. Supp. 2d 353 (S.D.N.Y. 1999) ....................................................................................27

*Braunfeld v. Brown*,
  366 U.S. 599 (1961) ..............................................................................................................15

*Carver v. City of New York*,
  621 F.3d 221 (2d Cir. 2010) .................................................................................................12

*Cent. UTA of Monsey v. Vill. of Airmont*,
  2020 U.S. Dist. LEXIS 13154 (S.D.N.Y. January 22, 2020) ...........................................21, 23

*Chabad Lubavitch of Litchfield County Inc. v. Litchfield Historic Dist. Comm'n*,
  768 F.3d 183 (2d Cir. 2014) .............................................................................................17, 26

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .................................................................................................9

*Church v. Russell-Tucker*,
  2023 U.S. Dist. LEXIS 213924 (D. Conn. Dec. 1, 2023) ....................................................24

*Coalition of Watershed Towns v. United States EPA*,
  552 F.3d 216 (2d Cir. 2008) .................................................................................................21

*Collins v. Sovereign Bank*,
  482 F. Supp. 2d 235 (D. Conn. 2007) ..................................................................................17

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill of Pomona*,
  280 F. Supp. 3d 426 (S.D.N.Y. 2017) ...........................................................................20, 21, 22

*Congregation Rabbinical College of Tartikov, Inc. v. Pomona*,
   2021 U.S. Dist. LEXIS 183302 (S.D.N.Y. 2021)......................................................................11

*Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona*,
   915 F. Supp. 2d 574 (S.D.N.Y. 2013)......................................................................................20

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill of Pomona*,
   945 F.3d 83 (2d Cir. 2019)..................................................................................................22, 26

*Craig v. City of New York*,
   2024 U.S. Dist. LEXIS 57629 (E.D.N.Y. Mar. 29, 2024) *aff'd* 2025 U.S. App.
   LEXIS 13905 (2d Cir. June 6, 2025) .......................................................................................24

*Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*,
   565 F.3d 56 (2d Cir. 2009)........................................................................................................7

*Fighting Finest v. Bratton*,
   95 F.3d 224 (2d Cir. 1996).........................................................................................23, 24, 25

*Fortress Bible Church v. Feiner*,
   694 F.3d 208 (2d Cir. 2012)...............................................................................................14, 15

*Fountain v. Karim*,
   838 F.3d 129 (2d Cir. 2016).......................................................................................................7

*Global Network Commc'ns Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006).......................................................................................................9

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*,
   2010 U.S. Dist. LEXIS 32318 ...................................................................................................9

*Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*,
   742 Fed. Appx. 521 (2d Circ. 2018) .......................................................................................10

*Jones-Bey v. Skarbo Stanislov*,
   2024 U.S. Dist. LEXIS 130175 (S.D.N.Y. July 23, 2024) ......................................................27

*Knick v. Scott*,
   139 S.Ct. 2162 (2019)................................................................................................................9

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991)......................................................................................................9

*Lawtone-Bowles v. City of New York*,
   2021 U.S. Dist. LEXIS 159883 (S.D.N.Y. August 23, 2021) .................................................27

*Life Covenant Church, Inc. v. Town of Colonie*,
   2017 U.S. Dist. LEXIS 148406 (N.D.N.Y. Sept. 13, 2017) ...................................................10

iv

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)..............................................................................................7

*Martin v. Prof'l Staff Cong. Local 2334*,
432 F. Supp. 3d 367 (S.D.N.Y. 2020)...............................................................................7

*Midrash Sephardi Inc. v. Town of Surfside*,
366 F.3d 1214 (11th Cir. 2004) ......................................................................................14

*Murphy v. New Milford Zoning Comm'n*,
402 F.3d 342 (2d Cir. 2005)...........................................................................7, 9, 10, 12

*Obie v. CFTC*,
2025 U.S. App. LEXIS 32779 (2d Cir. Dec. 16, 2025) .........................................................13

*Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*,
2021 U.S. Dist. LEXIS 62689 (S.D.N.Y. 2021)........................................................................11

*Osorio v. Westchester Cty.*,
2019 U.S. Dist. LEXIS 142045 (S.D.N.Y. Aug. 21, 2019) .........................................................8

*Plante v. Dake*,
621 Fed. Appx. 67 (2d Cir. 2015)...............................................................................7

*Rivera-Powell v. N.Y.C. Board of Elections*,
470 F.3d 458 (2d Cir. 2006)........................................................................................17

*Roberts v. United States Jaycees*,
468 U.S. 609 (1984)...................................................................................................23

*Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Village of Old Westbury*,
128 F. Supp. 3d 566 (E.D.N.Y. 2015) ...............................................................................23

*Sagaponack Realty, LLC v. Village of Sagaponack*,
778 Fed. Appx. 63 (2019) .......................................................................................9, 26

*Sanitation & Recycling Indus. v. City of New York*,
107 F.3d 985 (2d Cir. 1997)......................................................................................24

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004).......................................................................................13

*Smith v. Halstead*,
2025 U.S. Dist. LEXIS 189068 (S.D.N.Y. September 24, 2025)...........................................14

*Stagg P.C. v. United States Dep't of State*,
983 F.3d 589(2d Cir. 2020).......................................................................................21

*Sunrise Detox V, LLC v. City of White Plains*,
769 F.3d 118 (2d Circ. 2014)............................................................................................11

*Tabbaa v. Chertoff*,
509 F.3d 89 (2d Cir. 2007)...............................................................................................24

*In re Thelen LLP*,
736 F.3d 213 (2d Cir. 2013)................................................................................................9

*Thomas v. Town of Mamakating*,
792 Fed. Appx. 24 (2d Cir. Nov. 18, 2019) ......................................................................9, 12

*Westchester Day Sch. v. Mamaroneck*,
417 F. Supp. 2d 477 (S.D.N.Y. 2006).................................................................................15

*Westchester Day Sch. v. Vill. of Mamaroneck*,
504 F.3d 338 (2d Cir. 2007)...................................................................................14, 15, 16

*Williamson County Regional Planning Comm. v. Hamilton Bank*,
473 U.S. 172 (1985)..............................................................................................................9

*Witt v. Vill. of Mamaroneck*,
992 F. Supp. 2d 350 (S.D.N.Y. 2014)..................................................................................8

*Zito v. Town of Wawayanda*,
2013 U.S. Dist. LEXIS 189123 (S.D.N.Y. December 27, 2013) ............................................9

**Statutes**

42 U.S.C. §§2000a, *et seq.*................................................................................................13

42 U.S.C. § 2000cc(a)........................................................................................................14

42 U.S.C. § 2000cc(B)(2) .............................................................................................14, 16

42 U.S.C. § 2000cc(b)(3)(B)..............................................................................................19

N.Y. Town Law § 267-b(3) ...............................................................................................17

Town of Clarkstown Code, Ch. A295, Article II..............................................................18

Town oc Clarkstown Code §290-29(I)(7)........................................................................6, 22

**Rules**

Federal Rules of Civil Procedure Rule 8 ...........................................................................8, 23

N.Y. Civil Practice Law and Rules, Article 78..................................................................27

Rule 12(b)(1)............................................................................................................................1, 7

Rule 12(b)(6)............................................................................................................................1, 7

## Introduction

Defendants Town of Clarkstown ("Town"), Town Council of the Town of Clarkstown, , and Zoning Board of Appeals of the Town of Clarkstown ("ZBA"), (collectively "Defendants"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's complaint with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim, respectively.

## Preliminary Statement

Rabbi Naftali Horowitz ("Plaintiff") brings this action pursuant to 42 U.S.C. 2000cc, also known as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), as well 42 U.S.C. § 1983, alleging analogous constitutional violations to his civil rights.  Plaintiff is also asking this Court to exercise supplemental jurisdiction over a state matter governed by N.Y. Civil Practice Law and Rules, Article 78.  Plaintiff claims that his rights were violated when his application for an area variance to substantially alter the dimensions of his single-family residence to better accommodate religious gatherings at his home was denied by the ZBA.

As detailed herein, Plaintiff's claims fail for various reasons, including that (1) Plaintiff's claims are not justiciable because (a) Plaintiff has not obtained a final decision demonstration how local zoning law will be applied to his property and thus his claims are not ripe for adjudication and (b) Plaintiff does not have standing to seek declaratory and injunctive relief; (2) Plaintiff fails to allege a substantial burden on his religious exercise under RLUIPA or the First Amendment; (3) Plaintiff fails to allege that Defendants acted with discriminatory intent; (4) Plaintiff fails to allege that the Town's law place unreasonable limitations on the location of religious institutions within the Town; (5) Plaintiff has not suffered any injury resultant from the Town of Clarkstown's Local Law 5; (6) Plaintiff fails to allege a direct and substantial or significant inhibition of his right to expressive association and (7) Plaintiff's Article 78 claim is improperly plead here.

1

Rather, Plaintiff alleges that the ZBA denied the part of his area variance application that sought to increase the size of his home in a manner that would require substantial variation from local bulk regulations.  Plaintiff did not apply for a use variance, and the ZBA took no action with respect to Plaintiff's use of his home for religious purposes.  Plaintiff does not allege how much space is required for his religious practice.  Indeed, Plaintiff does not plausibly allege that the denial of his area variance application interferes with any of his religious practices.  Rather, the record shows the ZBA informed Plaintiff he could submit a modified application, and that a modified application may achieve Plaintiff's desired results, *inter alia*, of providing expanded space for his prayer gatherings.   But, instead of submitting a modified application as was suggested, Plaintiff filed the instant lawsuit.  This case is unripe and non-justiciable (as there is no concrete injury), and is a prime example of a premature local land use matter more aptly suited for local resolution.

**Relevant Facts and Procedural History**

The following summary is based on Plaintiff's Complaint, the documents and laws referenced in the Complaint, and other records of which this Court may take judicial notice.[1]

Plaintiff's Area Variance Application

Plaintiff is an individual resident of the Town.  Ex. A (Comp.), ¶10.  Plaintiff alleges that he is the owner of real property located at 4 Center Lane, New City, New York (hereinafter the "Property").  Ex, A, ¶17.  Plaintiff moved to the Property in 2021.  Ex. A, ¶19.  The Property is located within the Town's "R-15" zoning district, which allows, among other uses, single-family detached residences as a "Permitted by right" use. Ex. A, ¶20, Ex. D (Clarkstown Table 1

---

[1] All exhibits referenced herein are annexed to the accompanying declaration of Eliza M. Scheibel, Esq.

Residential Zoning Districts Land Use).  The Property consists of a 0.35 acre lot improved with a single-family home of 2,900 square feet.  Ex. A, ¶¶21,24.

Plaintiff alleges that, as a practicing rabbi of Orthodox Judaism, he uses a portion of his residence for Jewish prayer.  Ex. A, ¶¶25-27.  Plaintiff "believes that communal prayer in the Jewish faith requires a *minyan*, or quorum of at least ten adult males over the age of thirteen."  *Id*. ¶28.  After Plaintiff moved into the Property, he began hosting prayers.  *Id*. ¶¶38-40.   Plaintiff hosts prayers at the Property for a few hours on Friday evenings, Saturday mornings, and Saturday evenings.  Ex. A, ¶41.  Each weekend, approximately 20-25 adults and twenty children attend prayers at Plaintiff's residence.  Ex. A, ¶¶40, 65.  Approximately three or four families drive to the Property on Friday evenings and leave their cars at the Property on Saturday, before driving their cars home after sunset on Saturdays.  Ex. A, ¶42.

To better accommodate the prayer gatherings at his residence, on July 10, 2025, Plaintiff applied for an area variance seeking to make "substantial" additions to the Property.  Ex. A, ¶¶85-88, 100, 106 (Plaintiff sought to add a 1,447 square foot addition to the house, a 50% increase in the size of the house); *see also* Ex. C (ZBA Decision on Plaintiff's Area Variance Application) at p. 7 ("[Plaintiff's attorney] admitted the variance is substantial[.]").  Specifically, Plaintiff sought a 78% variance to the Floor Area Ratio, a 64% variance from the allowed maximum lot coverage, and a 25.5% variance from the side setback requirement, and to reduce the required parking spaces from two to one.  Ex. A ¶¶88, 100-101; Ex. C at p. 8; *see also* Ex. E (Clarkstown Table 12 General Bulk Requirements), Ex. F (Clarkstown Table 2 Residential Zoning District Parking and Loading Requirements).

The ZBA considered Plaintiff's area variance application at its November 10, 2025, meeting, at which it heard extensive testimony from Plaintiff's attorney, the ZBA members, and

public comment.  Ex. A, ¶98, Ex. C, pp.3-16.  In addition, the ZBA considered various submissions including Town and County memoranda and letters both in favor and against the proposed variance.  Ex. C, 3-4.

The ZBA discussed the applicable area variance standard under N.Y. Town Law Section 267-b(3), as well as the substantial departure from the area requirements that Plaintiff was seeking, which was unprecedented in the neighborhood.  Ex. A ¶¶98-124 (allegations regarding ZBA meeting), ¶143 (ZBA concerned re size of the variances requested); Ex. C (Decision) at p.4 and 14 (noting Board must balance the factors for an area variance), p. 6 ("[Plaintiff's attorney] stated the Board has made it clear that they are concerned with the size and degree of the variance.  If the Board would feel more comfortable granting the variance with it being somewhat scaled down, they still have to satisfy their religious purposes, the Applicant would be considerate of that. [ZBA] "inquired about the size of the room, 35x32, and how it was determined; based on their needs and if it could be scaled back.  Mr. Brecher [Plaintiff's expediter] stated he did not know how the architect determined the size"), ("[Plaintiff's attorney] stated it is a large variance[.]"), ("[Plaintiff's attorney] admitted the variance is substantial[.]"); p. 8 ("[ZBA] Chairman Milich stated the floor area ratio exceeds what is allowed by 78% and the maximum lot coverage exceeds what is allowed by 64%."); p. 9 ("[Plaintiff] stated he understands the variance is big[] he was told the variance he is seeking is big[.]") ("[ZBA board member] Mistretta stated the Board does try to help Applicants as much as they can, but this is a big request…It is a big request to have such an addition put on the house."). During the hearing, Plaintiff's attorney stated that Plaintiff could consider a smaller variance given the ZBA concerns about the size of the variance, Ex. C at 6, and the ZBA suggested that a modified application would be considered by the board if submitted, *id*. at p.14.

In light of the substantial departures requested by Plaintiff, the ZBA denied Plaintiff's application for variances pertaining to floor area ratio, lot coverage, and side yard setback requirements. Ex. C, p. 22. On November 24, 2025, the ZBA granted the portion of Plaintiff's application that sought a variance from the residential parking requirements. Ex. C, p. 23.

The ZBA issued a written decision on Plaintiff's variance application on December 8, 2025. *See generally*, Ex. C. The ZBA explained the reasoning behind its decision to deny Plaintiff's area variance application in accordance with the factors set out at Town Law 267-b(3)(b). Ex. C, 17-22. The ZBA addressed the magnitude of Plaintiff's request and found, *inter alia*, that the requested variance would be far too substantial, and unprecedented thereby producing an adverse effect on the neighborhood. Ex. C, p. 21 ("The requested FAR, lot coverage, and side yard variances are substantial when taken in the context of the effect of the surrounding neighborhood and other lots and residences in the area as was admitted by the Applicant … An undesirable change will be produced in the character of the neighborhood which will be a detriment to nearby property owners if the FAR, lot coverage, and side yard area variances were approved. … The Applicant provided no evidence that, if approved, his home would be consistent with homes in the area. In fact, testimony was contrary."). Additionally, there was no showing that it was not feasible for Plaintiff to achieve the desired benefits via a smaller variance. *See* Town Law 267-b(3)(b)(2), 267-b(3)(c) (advising that Board should grant minimum area variance necessary).

During the November 10, 2025, hearing, after all comments, Plaintiff's attorney requested that the hearing be adjourned "to see if they can work something out." Ex. A ¶130; Ex. C, p. 15. The ZBA declined to adjourn the hearing, explaining that it did not want to burden the members of the public who had attended to make comments at the November 10 hearing; however, the ZBA

advised Plaintiff's counsel that Plaintiff was welcome to submit a modified application.  Ex. C, pp. 15-16.

Local Law 5 of 2016

The Town's Local No. 5 of 2016 (hereinafter "Local Law 5"), which, in pertinent part, applies to "[a]ll uses other than single-family residences," states that such uses "shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map."  Town Code § 290-29(I)(7).  The Town explained upon Local Law 5's enactment that the law was meant to "(1) Preserve the suburban and remaining semi-rural character of the Town; (2) Develop zoning and building regulations that reduce or restrict odors, sounds, commercial traffic, light pollution and other negative environmental impacts on residential areas; [and] (3) Expand initiatives to safeguard neighborhoods from inappropriately scaled development."  Ex. F (Full Copy of Local Law No. 5).

Notably, Plaintiff did not file an application for a variance from Local Law 5.  before the ZBA , Plaintiff asserted he was only seeking an area variance from the area bulk requirements, not an application to change the use of the Property to a house of worship.  Ex. A, ¶¶87, 88, 99, 123.

The Instant Action

Plaintiff filed the instant action on January 20, 2026, asserting the following claims: (1) violations of RLUIPA's "Substantial Burdens" provision; (2) violations of RLUIPA's "Nondiscrimination" provision; (3) violations of RLUIPA's "Exclusion and Limits" provision; (4) violations of the Free Exercise Clause of the United States Constitution, pursuant to 42 U.S.C. § 1983; (5) violations of  Freedom of Association pursuant to 42 U.S.C. § 1983; (6) violations of the Equal Protection Clause of the United States Constitution, pursuant to 42 U.S.C. § 1983; and (7) a claim pursuant to New York Civil Practice Law and Rules Article 78.  Ex. A.  Plaintiff seeks declaratory and injunctive relief, including injunctive relief requiring the ZBA to grant his

application and permit construction of the addition as stated in his application, annulment of Local Law 5, unspecified compensatory damages, and attorneys' fees.  Ex. A at p.39-40.

Because Plaintiff's claims are not justiciable and the complaint fails to state a claim, Defendants move to dismiss the Complaint with prejudice.

**Argument**

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal citations omitted).  "Rule 12(b)(1) permits a party to move to dismiss a complaint for 'lack of subject matter jurisdiction.' 'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Martin v. Prof'l Staff Cong. Local 2334*, 432 F. Supp. 3d 367, 376 (S.D.N.Y. 2020) (internal citations omitted).  Issues of justiciability due to a lack of standing speak to a court's subject matter jurisdiction over a matter and, thus, can be challenged pursuant to Rule 12(b)(1).  *See generally Plante v. Dake*, 621 Fed. Appx. 67 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (citation omitted)); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) ("Ripeness is a jurisdictional inquiry" and the court is required to "presume that we cannot entertain [a plaintiff's] claims unless the contrary appears affirmatively from the record.").  When considering a motion to dismiss pursuant to Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

7

*v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Indeed, Rule 8 of the Federal Rules of Civil Procedure 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Osorio v. Westchester Cty.*, 2019 U.S. Dist. LEXIS 142045, at *4 (S.D.N.Y. Aug. 21, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.*, 550 U.S. at 555. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If a plaintiff "ha[s] not nudged [his/her] claims across the line from conceivable to plausible, [his/her] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'- 'that the pleader is entitled to relief.'" (internal citation omitted)).

In assessing whether a plaintiff has alleged a "plausible" claim, "mere conclusory statements" or "a formulaic recitation of the elements: of a claim are not presumed to be true and will not suffice to shield the complaint from dismissal. *See Iqbal*, 556 U.S. at 678; *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 360 n.10 (S.D.N.Y. 2014). Instead, such allegations should be disregarded. *Iqbal*, 556 U.S. at 679 ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

In addition to the non-conclusory, plausible allegations contained in the complaint, on a Rule 12(b)(6) motion, a court may also consider documents incorporated to the complaint by reference; matters of which judicial notice may be taken;[2] and documents "integral" to the complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002); *see also In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).  "Where such documents contradict plaintiff's allegations, dismissal is appropriate."  *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 32318, \*17; 2010 WL 1257300 (S.D.N.Y. March 31, 2010).

I. **PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE AND THEREFORE MUST BE DISMISSED**

A. **Plaintiff's Claims Are Not Ripe For Judicial Review Because the ZBA Took No Final Position on Application of the Law to Plaintiff's Property and Indicated It Would Consider a Modified Application**

Under *Williamson County Regional Planning Comm. v. Hamilton Bank,* 473 U.S. 172 (1985), for a land use dispute not involving a Fifth Amendment Takings claim to be considered ripe, the plaintiff must "obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations."  *Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 348 (2d Cir. 2005); *Sagaponack Realty, LLC v. Village of Sagaponack,* 778 Fed. Appx. 63, 64 (2019) (confirming applicability of final decision requirement even after *Knick v. Scott*, 139 S.Ct. 2162 (2019) (affirming dismissal for lack of ripeness); *see also Thomas v. Town of Mamakating,* 792 Fed. Appx. 24 (2d Cir. Nov. 18, 2019) (affirming dismissal for lack

---

[2] The Court may take judicial notice of documents filed in other litigation, as well as past and current local laws. *See Global Network Communs Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). "[T]he Court may also take judicial notice of the Town's existing and past zoning laws, Zoning Board of Appeals ('ZBA') decisions, a Town Board resolution dated May 21, 2013, and certain State Supreme Court decisions in Article 78 proceedings, all of which are public documents." *Zito v. Town of Wawayanda*, 2013 U.S. Dist. LEXIS 189123, \*2 (S.D.N.Y. December 27, 2013).

of ripeness).  The finality requirement applies to zoning challenges based on the Free Exercise

Clause of the First Amendment, as well as to claims under RLUIPA.  *See Islamic Cmty. Ctr. for*

*Mid Westchester v. City of Yonkers Landmark Pres. Bd.,* 742 Fed. Appx. 521, 523-525 (2d Cir.

2018); *Life Covenant Church, Inc. v. Town of Colonie,* 2017 U.S. Dist. LEXIS 148406, at \*17

(N.D.N.Y. Sept. 13, 2017).

As explained by the Second Circuit, the final decision requirement serves multiple

purposes including: (1) aiding in the development of a full record, (2) informing a court "precisely

how a regulation will be applied to a particular parcel"; (3) "enforce[ing] the long-standing

principle" of constitutional avoidance because "a variance might provide the relief the property

owner seeks without requiring judicial entanglement in constitutional disputes"; and (4) supporting

principles of federalism  by "requiring a property owner to obtain a final, definitive position from

zoning authorities" thereby "evinc[ing] the judiciary's appreciation that land use disputes are

uniquely matters of local concern more aptly suited for local resolution."  *Murphy*, 402 F.3d at

347.  "The final-decision rule is designed to aid courts in understanding exactly how a litigant is

being harmed by a land use designation, and to prevent litigants from rushing into federal courts

when the harm could be avoided through a local process."  *Islamic Cmty. Ctr.*, 742 Fed. Appx. at

525.

Thus, in land use cases, before commencing litigation, the plaintiff is "required to obtain a

final, definitive position as to how it could use the property from the entity charged with

implementing the zoning regulations."  *Murphy*, 402 F.3d 342, 349 (2d Circ. 2005) (internal

citations omitted).  "*Williamson County*'s final-decision requirement helps distinguish between

those cases in which a plaintiff has suffered a 'concrete and particularized,' 'actual or imminent'

injury, and those in which the injury is 'merely speculative and may never occur, depending on

10

the final administrative resolution. A non-final decision on how a parcel of land may be used does not ordinarily give rise to an injury that is sufficiently concrete or particularized to satisfy Article III." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 122 (2d Circ. 2014); *Congregation Rabbinical College of Tartikov, Inc. v. Pomona,* 2021 U.S. Dist. LEXIS 183302, \*22 (S.D.N.Y. 2021) ("A final decision is a definitive position on the issue that inflicts an actual, concrete injury.").

Moreover, "that [p]laintiffs bring facial claims does not exempt them from the finality requirement." *Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*, 2021 U.S. Dist. LEXIS 62689, at \*32-33 (S.D.N.Y. Mar. 31, 2021) ("Plaintiffs cannot circumvent the final decision requirement by seeking damages pursuant to a facial challenge"). "In the end, '[a] case is ripe when the court 'can look to a final, definitive position from a local authority to assess precisely how [a property owner] can use [his or her] property.'" *Id.* at \*29.

Here, Plaintiff fails to establish that his claims are ripe for adjudication as there has been no "final, definitive position from a local authority as to precisely how" the local zoning ordinances will be applied to Plaintiff's property, and the Town has made no effort to alter Plaintiff's use of his property for religious purposes, which has been ongoing for at least three years. *See Orthodox Jewish Coal. of Chestnut Ridge*, 2021 U.S. Dist. LEXIS 62689 at \*29. While Plaintiff filed an application for area variances, he did not file an application for a use variance. Thus, the ZBA's decision on the area variance application does not constitute a "definitive position" on "precisely" how Plaintiff could *use* his Property. Nor does it constitute a "definitive position" on application of the bulk requirements to his property where the ZBA granted the application in part and stated that Plaintiff could submit a modified application, and Plaintiff's counsel indicated that a modified application might meet Plaintiff's needs. *See* Ex. C at 6, 13-14, 16; Ex. C at 5, n.3 (also noting

11

that board made no determination as to whether Plaintiff could qualify for a use variance if he applied).

### B. Plaintiff Fails to Show that Submission of a Modified Application Would Be Futile

While the Courts have carved out certain exceptions to the final decision requirement, Plaintiff cannot satisfy the exceptions. Notably, "[a] property owner, [] will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." *Murphy*, 402 F.3d at 349. To demonstrate futility, Plaintiff must establish that a "zoning agency[] has dug in its heels and made clear that all [future] applications will be denied." *Id.* (internal citations omitted).

Here, Plaintiff cannot show futility so as to be excused from the final decision requirement. Conclusory assertions of differential treatment or an alleged two-month delay in consideration of his application are insufficient to establish futility, particularly where the ZBA granted his application in part and expressed a willingness to work with Plaintiff and consider a modified application. *See e.g.*, *Town of Mamakating*, 792 Fed. Appx. at 28 (expressions of "exasperation and skepticism" by chairman of zoning board and alleged intermittent delays of "several unnecessary months" were insufficient to satisfy futility exception to final decision requirement).

As such, Plaintiff does not qualify for an exception to the final decision requirement; his claims are not ripe to be adjudicated and, his Complaint should be dismissed.

### C. Plaintiff Lacks Standing to Seek Declaratory or Injunctive Relief

In his request for relief, Plaintiff asks this Court for declaratory judgments as well as injunctive relief from multiple local laws and land use decisions. Ex. A, ¶¶A, B, E, F, G, H.

Where a plaintiff seeks declaratory relief, "a plaintiff must show a likelihood that he will be injured in the future." *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010). "In order

to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.' In doing this, he 'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he…will be injured in the future.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (internal citations omitted).

Plaintiff cannot satisfy this legal requirement of imminent injury in the future. First, Plaintiff has not suffered an injury, as he still maintains the same rights as he did prior to his variance application. Prior to applying for an area variance from the zoning code, Plaintiff used a portion of his single-family home on the Property to host Jewish prayer for members of his community, Ex. A, ¶¶27-28, and the ZBA decision had no effect on this use. *See* Ex. C (ZBA's decision strictly pertains to the variance application, not Plaintiff's ability to host prayer congregations in his home). Plaintiff's rights were never curtailed or infringed upon; he stands in the same position as he did prior to the application as to the use of his property.

Second, Plaintiff does not plausibly allege a future injury with respect to application of the Town's bulk requirements as he does not allege that he cannot obtain an area variance that would provide the desired benefit of more comfortably hosting prayer gatherings. Plaintiff fails to allege any future non-speculative injury as regards Local Law 5. He has never applied for nor been denied a variance from the Local Law; he merely alleges a conclusory speculation that if such a request were denied, he would be injured. *See Obie v. CFTC*, 2025 U.S. App. LEXIS 32779, *7 (2d Cir. Dec. 16, 2025) (plaintiff not entitled to declaratory relief where alleged future injury was contingent upon assertion that plaintiff was "consider[ing] a return" to employment with the CFTC). Thus, Plaintiff has failed to establish standing to seek declaratory or injunctive relief.

13

## II.   PLAINTIFF DOES NOT PLAUSIBLY ALLEGE VIABLE RLUIPA CLAIMS

Plaintiff's Complaint asserts claims under three provisions of RLUIPA, 42 U.S.C. §§2000a, *et seq.*: (i) substantial burden; (ii) nondiscrimination; and (iii) exclusion and limits.  For the reasons stated below, Plaintiff has failed to plausibly allege viable claims under these provisions.

### A.  Plaintiff Fails To State A "Substantial Burden" Claim Under 42 U.S.C. § 2000cc(a)

RLUIPA's "substantial burden" provision states "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution- (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C.  § 2000cc(a)(1)(A-B).

The Second Circuit defines "substantial burden" in this context as one which "directly coerces the religious institution to change its behavior."  *Fortress Bible Church v. Feiner,* 694 F.3d 208, 218-19 (2d Cir. 2012); *see also  Westchester Day Sch*, 504 F.3d at 349 (emphasis in original) (citing *Midrash Sephardi Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) ("[A] substantial burden is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.").  Thus, "a substantial burden on religious exercise exists when an individual is required to choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand.'"  *Smith v. Halstead*, 2025 U.S. Dist. LEXIS 189068, \*7 (S.D.N.Y. September 24, 2025) (*quoting Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007).  "The burden must have more than a minimal impact on religious exercise, and there must be a

close nexus between the two." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 219 (2d Cir. 2012). The Supreme Court has held that there is no "substantial burden" when the governmental action only has an incidental effect that makes it more expensive or difficult to practice one's religion. *See Braunfeld v. Brown*, 366 U.S. 599, 605 (1961). Allegations that amount to no more than inconvenience, do not state a substantial burden on religious exercise. *See Westchester Day Sch. v. Mamaroneck*, 417 F. Supp. 2d 477, 547 (S.D.N.Y. 2006) ("Of course, mere 'inconvenience' does not rise to the level of 'substantial burden.'" (internal citations omitted).

In *Westchester Day School*, the Second Circuit explained that a substantial burden is generally not present when, "a municipality denies a religious institution the right to expand its facilities[.]…[and] when the denial of a religious institution's application to build is not absolute, such would not necessarily place substantial pressure on the institution to alter its behavior, since it could just as easily file a second application that remedies the problems in the first." *Westchester Day Sch.*, 504 F.3d at 549.

Plaintiff's allegations fall squarely within the circumstances that the Second Circuit has identified as inadequate to state a substantial burden. Plaintiff alleges that he seeks to expand his single-family home to provide more space for the weekly prayer gatherings he has hosted since 2021. Ex. A, ¶88. As described by the Second Circuit, here, there has been no absolute denial of Plaintiff's application; rather, the ZBA made it clear that it was willing to work cooperatively with Plaintiff to approve an application that was not so substantial. *See* Ex. C, p. 16. Moreover, Plaintiff's counsel informed the ZBA that, given their concerns regarding the size of the requested variance, Plaintiff could consider submitting a "scaled down" request that would still "satisfy their religious purposes." Ex. C (Decision) at 6. Thus, Plaintiff fails to allege that there were no

15

reasonable alternatives to the proposed substantial variance to accommodate his religious exercise. *See Westchester Day Sch.*, 504 F.3d. 338.

Notably, there are no non-conclusory allegations that the requested size of the expansion is necessary to Plaintiff's religious practice.  Plaintiff alleges that he has been conducting prayer gatherings at his house for the past three years, which has accommodated approximately twenty to twenty-five adults.  Ex. A, ¶¶19, 40; Ex. C at p.7.  Plaintiff does not allege that without an area variance of the size he requested he will be unable to host the quorum of 10 adult males that he alleges is required for his religious practice.  *Id*. at ¶28.  Nor does Plaintiff allege that he has had to stop or change his prayer gatherings due to the denial of his application.

The Complaint is lacking any allegations of the necessary "coercion" to constitute a substantial burden or nexus between the denial of the area variance and any alleged effect on Plaintiff's religious practice.  The ZBA made no mention of restricting Plaintiff's ability to continue his religious use of his Property, nor does Plaintiff allege any such restriction.  Therefore, Plaintiff fails to allege a substantial burden to religious practice.  As such, Plaintiff's First Cause of Action pursuant to RLUIPA fails and must be dismissed, with prejudice.

### B.  Plaintiff Fails To State A RLUIPA "Nondiscrimination" Claim Under 42 U.S.C. § 2000cc(b)(2)

Plaintiff allegation that Defendants violated RLUIPA's nondiscrimination provision "[b]y denying the Application" and "implementing land use regulations on their face and as applied in a manner that discriminates against him" Ex. A ¶232, fails for lack of allegations of discriminatory intent.

RLUIPA's nondiscrimination provision provides: "No government shall impose or implement a land use regulation that discriminates against any assembly or institute on the bases of religion or religious denomination."  42 U.S.C. § 2000cc(b)(2).  "[U]nlike the substantial burden

16

and equal terms provisions [of RLUIPA], evidence of discriminatory *intent* is required to establish a [nondiscrimination] claim." *Chabad Lubavitch of Litchfield County, Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 198 (2d Cir. 2014). "[C]ourts assessing discriminatory intent … have considered a multitude of factors, including the series of events leading up to a land use decision, the context in which the decision was made, whether the decision or decisionmaking process departed from established norms, statements made by the decisionmaking body and community members, reports issued by the decisionmaking body, whether a discriminatory impact was foreseeable, and whether less discriminatory avenues were available." *Id* at 199.

Failure to sufficiently allege that the challenged action "was the 'result of intentional or purposeful discrimination'" requires dismissal of a nondiscrimination claim. *See Ackridge v. Aramark Corr. Food Servs.*, 2018 U.S. Dist. LEXIS 54733, *59 (S.D.N.Y. Mar. 30, 2018) (dismissing equal protection claims for failure to sufficiently allege that the denial of kosher meals and regular Jewish services was the result of purposeful discrimination).

While Plaintiff's Complaint contains conclusory assertions that the ZBA's decision was discriminatory, these allegations are unsupported by any non-conclusory allegations of "particularized incidents" demonstrating discriminatory intent. Ex. A ¶¶92, 215; *see Ackridge*, 2018 U.S. Dist. LEXIS 54733 at *59-60 (quoting *Collins v. Sovereign Bank*, 482 F. Supp. 2d 235 (D. Conn. 2007); *Rivera-Powell v. N.Y.C. Board of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) (plaintiff's "complaint proffers only a conclusory allegation of discrimination, which, 'without evidentiary support or allegations of particularized incidents, does not state a valid claim' and so cannot withstand a motion to dismiss").

The factors above referencing the decision-making body and decision-making process can readily be analyzed upon viewing the ZBA's decision. *See* Ex. C. The ZBA decision shows that

17

the context of the decision, adherence to procedural norms, and statements by the decision-making body are void of any indication of religious animus. The "testimony" section shows an open dialogue between the ZBA members and Plaintiff's attorney, and consideration of the factors set forth by Town Law § 267-b(3) for area variances. Therefore, the decision-making process followed applicable procedure, involved a discussion of the applicable variance factors, and did not involve any discriminatory comments by any ZBA members. *See*, Town Code, Ch. A295, Article II (Procedure [for Appeals to the ZBA]).

It is perhaps because Plaintiff could not identify any expressions of discriminatory animus regarding his variance application that Plaintiff devotes five pages of his Complaint to repeating allegations from an unrelated religious discrimination complaint filed against the Town over five years ago, which was subsequently dismissed. *See* Ex. A ¶¶174-186; *See Ateres Bais Yaakov Academy of Rockland v. Town of Clarkstown et al*, 20-cv-1399, Doc. 68 (Mar. 27, 2024). However, alleged statements made by unidentified individuals in 2018 (*see, e.g.,* Ex. A ¶180(E)) about an unrelated application do not give rise to an inference of discrimination by the members of the ZBA when considering Plaintiff's application for an area variance in late 2025.

Plaintiff attempts to allege differential treatment with respect to the ZBA's declination to continue his application to the next meeting by alleging two instances in which the ZBA held "continuation of Public Hearings" for variances. Ex. A (Compl.) at ¶¶135-136. However, the instances cited by Plaintiff are not substantially similar. As explained by the ZBA, they declined to continue Plaintiff's application so as not to burden the public; many residents had attended the November 10, 2025 ZBA meeting to comment on Plaintiff's application. In the two instances of continued applications cited by Plaintiff, there was no public comment on the applications. Ex. G (8/4/2025 and 9/8/25 ZBA Minutes sunroom application #4409, 10/27/25 ZBA Minutes re #4419

18

second story addition).  Accordingly, Plaintiff fails to allege differential treatment of similarly situated comparators.

As for the series of events leading up to the denial of the variance application, Plaintiff's allegations of a two-month processing time for a variance application does not plausibly allege animus; particularly, where the Complaint fails to include any non-conclusory factual allegations that similar applications were processed faster.  Ex. A, ¶¶89-95, 91-92.[3]

Nor was any discriminatory impact foreseeable given the ZBA decision had no effect on Plaintiff's continued use of his home for prayer gatherings, the ZBA granted the requested parking variance, Plaintiff's counsel indicated Plaintiff was open to a "scaled back" proposal, and the ZBA's indication that a modified application would be considered.

Accordingly, Plaintiff failed to adequately plead Defendant's discriminatory intent and the RLUIPA Nondiscrimination claim should be dismissed with prejudice.

### C.  Plaintiff Fails To State An "Exclusion and Limits: Unreasonable Limitation" Claim Under 42 U.S.C. § 2000cc(b)(3)(B)

Plaintiff alleges that "by adopting the State/County Road Law, and by denying the Application," Defendants are "imposing and implementing land use regulations both on their face and as applied to Plaintiff in a manner that unreasonably limits religious assemblies, institutions, and structures within their jurisdiction."  Ex. A, ¶238.

---

[3] Consideration of the correspondence cited at Complaint at ¶93, shows that Plaintiff and the Building Inspector's office were in frequent and courteous contact with prompt responses from the Building Inspector.  *See* Ex. F.  The Building Inspector provided an anticipated timeline for review in light of other applications in the queue and provided information regarding errors requiring correction in Plaintiff's application.  *See* Ex. F, at p.23/27 (on 7/28/25, plaintiff informed of several week timeline to review 6 applications ahead of plaintiff's); p.14/27 (on 9/16/25 "Your application is next in the queue."); p.18/27 (on 9/22/25 informing plaintiff of miscalculations and missing information in his application); p.22/27 (on 9/25/25 Town hasn't received revised paperwork).

19

RLUIPA's "Unreasonable Limitations" provision states that '[n]o government shall impose or implement a land use regulation that… (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(B).

"The purpose of this provision 'is not to examine the restrictions placed on individual landowners, but to prevent municipalities from broadly limiting where religious entities can locate." *Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 637 (S.D.N.Y. 2013) (internal citations omitted). Indeed, "[t]he unreasonable limitations provision does not mandate that the [municipality] have a reasonable zoning ordinance; it requires only that the zoning ordinance in place not unreasonably limit religious uses." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill of Pomona*, 280 F. Supp. 3d 426, 488 (S.D.N.Y. 2017), *vacated on other grounds*, 945 F.3d 83 (2d Cir. 2019). Applying this standard to the present case, it is evident that Plaintiff has failed to plausibly allege claims pursuant to RLUIPA's "unreasonable limitation" provision.

1. Plaintiff Fails to State an Unreasonable Limitations Claim Based on the Denial of His Application.

Plaintiff's claim that the denial of his variance application violated the "Exclusion and Limits" provision of RLUIPA fails since the "Unreasonable Limitations" provision is not addressed to a restriction placed on an individual landowner, and Plaintiff does not plausibly allege that the Town's zoning law and the area variance standards have "the effect of depriving both the plaintiff and other religious institutions or assemblies of reasonable opportunities to practice their religion[.]" *See Tartikov*, 280 F. Supp. 3d at 487 (citation and internal punctuation omitted).

20

2.  Plaintiff Lacks Standing to Challenge Local Law 5 under the "Unreasonable Limitations" Provision

In order to satisfy the Article III standing requirement, "'the plaintiff must have suffered an 'injury in fact'- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'- which is fairly traceable to the defendant's actions and redressable by a favorable decision. The injury-in-fact requirement 'helps ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'"" *Stagg P.C. v. United States Dep't of State*, 983 F.3d 589, 601(2d Cir. 2020) (internal citations omitted). A claim can only be deemed redressable if there is a "non-speculative likelihood that the injury can be remedied by the requested relief." *Coalition of Watershed Towns v. United States EPA*, 552 F.3d 216, 218 (2d Cir. 2008).

Plaintiff lacks standing to challenge Local Law 5 under the Unreasonable Limitations provision of RLUIPA. Plaintiff does not allege that he ever filed an application with the Town that implicated Local Law 5, the Complaint is devoid of any allegations of injuries due to Local Law 5, or any allegations as to how any alleged injury would be redressed by annulment of Local Law 5. *See generally* Ex. A. Therefore, any injury Plaintiff alleged he suffered because of Local Law 5 would be "merely conjectural" and would warrant dismissal. *See Cent. UTA of Monsey v. Vill. of Airmont*, 2020 U.S. Dist. LEXIS 13154, at *31 (S.D.N.Y. January 22, 2020).

In *Tartikov*, the district court held that the plaintiff school lacked standing to bring as-applied challenges to various local laws because it had not submitted any building application for its property which would have triggered application of the laws. 280 F. Supp. 3d at 446. However, the district court proceeded to consider (and reject) the Plaintiff's facial challenge to the laws under RLUIPA's Unreasonable Limits provision. *Tartikov*, 280 F. Supp. 3d at 487-488. On appeal, the Second Circuit held that the absence of a building permit application also deprived the plaintiff of

21

standing for a facial challenge to the laws as it made any injury speculative. *See Congregation Rabbinical College of Tartikov, Inc.*, 945 F.3d at 110 (school lacked standing to assert First Amendment free exercise, free speech, and free association claims, and *inter alia* RLUIPA substantial burden and exclusions and limits claims where alleged injury from law was speculative because plaintiff never submitted a formal proposal "that would implicate or invoke the operation of the challenged zoning law."). Similarly, here, Plaintiff never submitted any application that would implicate operation of Local Law 5. Indeed, Plaintiff's allegations on this point acknowledge the speculative nature of his claim, he alleges only that "to the extent" that he may apply in the future to change the use of his property to a house of worship and the Town were to deny that application on the ground that he was not located on a State or County road, then his religious practice would be burdened. Ex. A (Compl.) ¶210. As Plaintiff has not applied to use his property as a Place of Worship, and the Town has not denied any such application, the alleged injury is speculative and conditioned on events that have not and may never occur.

      3.  <u>Plaintiff's Facial Challenge to Local Law 5 Fails To State a Claim</u>

Even if Plaintiff had standing to challenge Local Law 5, the claim would fail. Local Law 5 makes no reference to religion; it is a facially neutral law, pertaining to "[a]ll uses other than single-family residences." Town Code § 290-29(I)(7). Plaintiff's conclusory allegation that he personally would suffer a burden on his religious practice via some future application of Local Law 5, Ex. A (Compl.) ¶210, does not plausibly that Local Law 5 broadly or unreasonably limits where religious entities can locate with in the Town. *See Adhi Parasakthi Charitable v. Twp. Of W. Pikeland*, 721 F. Supp. 2d 361, 387 (E.D.Pa. 2010) (restrictive covenant limiting size of building permitted on the lot with zoning board discretion did not constitute an "unreasonable limit" on religious assemblies within a jurisdiction) *cited with approval in Tartikov*, 280 F. Supp. 3d 426 (S.D.N.Y. 2017).

### III.    PLAINTIFF'S FREE EXERCISE CLAIM FAILS

The standard applicable to state a claim under Section 1983 for violation of the Free Exercise Clause is substantially the same as an RLUIPA "substantial burden" claim.  *See Cent. UTA of Monsey v. Vill. of Airmont,* 2020 U.S. Dist. LEXIS 13154 at *38-39 (S.D.N.Y. January 22, 2020) (citing *Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Village of Old Westbury*, 128 F. Supp. 3d 566 (E.D.N.Y. 2015) ("Substantial burden claims under RLUIPA are intended to mirror the framework of First Amendment free exercise claims.").  Therefore, since Plaintiff's substantial burden claims pursuant to RLUIPA failed for the reasons stated above, so too does his constitutional Free Exercise claim.

### IV.    PLAINTIFF'S FREEDOM OF ASSOCIATION CLAIM FAILS

Plaintiff's claim that his right to freedom of expressive association has been curtailed fails as the complaint fails to allege a significant burden on his ability to associate but instead, at most, alleges only an incidental burden which does not state a cognizable First Amendment claim. [4]

"[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."  *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).  However, not all inhibitions on a party's right to associate rise to the level of a constitutional violation.  *See Fighting Finest v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996) ("The Supreme Court has held that, consistent  with the First Amendment, government may engage in some conduct that incidentally inhibits protected forms of association.").  Indeed, "[t]hough such

---

[4] Indeed, Plaintiff's Freedom of Association claims should be dismissed for failure to satisfy the notice pleading requirements of Rule 8 as the Complaint does not identify how Defendants allegedly infringed Plaintiff's rights of association. *See* Ex. A, ¶¶253 (conclusory allegation that Defendants' unspecified "laws" and "actions" deprive him of his right).

inhibiting conduct might make it more difficult for individuals to exercise their freedom of association, this consequence does not, without more, result in a violation of the First Amendment. To be cognizable the interference with associational rights must be 'direct and substantial' or 'significant.'" *Id* (internal citations omitted).

Cases finding a cognizable infringement of the right to expressive association involve penalties for past associations or preclusion of future association. *See*, *e.g. Sanitation & Recycling Indus. v. City of New York*, 107 F.3d 985, 997 (2d Cir. 1997) (denying carting license based on association with persons associated in racketeering and prohibiting association with trade associations involving individuals identified as members of organized crime); *Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007) (imposing invasive border-search procedures upon plaintiffs' return to US based on their attendance at Islamic conference without individualized suspicion of wrongdoing). By contrast, "[m]ere incidental burdens on the right to associate do not violate the First Amendment[.]" *Tabbaa*, 509 F.3d at 101; *see e.g., Craig v. City of New York*, 2024 U.S. Dist. LEXIS 57629, *18 (E.D.N.Y. Mar. 29, 2024) (granting Rule 12(b)(6) motion to dismiss freedom of association claim where plaintiff's allegations regarding defendants' treatment of union groups alleged only incidental burden on Plaintiff's right to associate with union) *aff'd* 2025 U.S. App. LEXIS 13905, *5 (2d Cir. June 6, 2025); *Church v. Russell-Tucker*, 2023 U.S. Dist. LEXIS 213924, *35-36 (D. Conn. Dec. 1, 2023) (dismissing freedom of association claim because requirement that religious daycare comply with state vaccine requirements did not inhibit right to associate).

Assuming arguendo that Plaintiff seeks to base an expressive association claim on the ZBA Decision or Local Law 5, the Complaint fails to state a claim. There are no allegations that the ZBA decision was intended to prevent Plaintiff's prayer gatherings or that it constituted a penalty

24

for attending such gatherings.  In fact, the ZBA granted Plaintiff's request for a parking variance to avoid the requirement of two off-street parking spaces.  Ex. C, p. 23.  Nor are there any nonconclusory allegations that either the ZBA Decision or Local Law 5 had any effect on Plaintiff's ability to associate with anyone, let alone that they "directly and substantially" inhibited his association.  Rather, Plaintiff alleges that he has been hosting prayer gatherings of several dozen people since 2021, Ex. A. ¶40.  Plaintiff does not allege that the ZBA Decision had any effect on these associations continuing.  Instead, the Complaint includes the vague allegation that the home is not large enough "to accommodate all those who seek to pray with him," *id*. at ¶44.  Notably, Plaintiff does not allege how many people he seeks to accommodate in his home, nor does it identify any individuals who are not able to associate with him due to the limitations, he merely alleges that gatherings would be more convenient with more space.  *E.g.*, Ex. A, ¶¶44-54.[5] That Plaintiff alleges his home is crowded, does not constitute an unconstitutional infringement of the First Amendment Freedom of Association.  "The First Amendment does not compel government to facilitate the ease with which an individual may exercise associational rights." *Fighting Finest*, 95 F.3d at 228.

For the foregoing reasons, Plaintiffs fails to state a claim for a violation on his right to expressive association.  As such, his fifth cause of action must be dismissed, with prejudice.

---

[5] Plaintiff's freedom of association claim is also unripe because the partial denial of the variance application does not prevent Plaintiff from submitting a modified application that would accommodate his gatherings.  Rather, at the ZBA hearing, Plaintiff was unable to explain how he calculated the total additional requested space, and Plaintiff suggested he could submit an application for a smaller area variance.  Ex. C at 6, 16.  Plaintiff's Complaint is also void of any allegations explaining how the requested additional space was calculated.

25

## V.    PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS

Plaintiff alleges that "Defendants have deprived and continue to deprive Plaintiff of his right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution, by discriminating against Plaintiff on the basis of his religion and religious denomination." Ex. A, ¶253.

The Second Circuit has held that RLUIPA[] codified 'existing[] Equal Protection rights against states and municipalities' that discriminated against religious land use." *Chabad*, 768 F.3d at 198. Further, "RLUIPA's nondiscrimination provision, as well as the related equal terms provision, have similarly looked to equal protection precedent in weighing such claims." *Id.* Thus courts "[t]reat the RLUIPA nondiscrimination claims as overlapping with the equal protection claims." *Congregation Rabbinical College of Tartikov, Inc.*, 945 F.3d at 108. As such, to the extent Plaintiff's Equal Protection Claim is based on a theory of intentional discrimination, Plaintiff's Equal Protection claims must fail for the same reasons his RLUIPA nondiscrimination claims fail.

To the extent Plaintiff seeks to assert an Equal Protection claim based on a theory of selective prosecution, the claim must be dismissed as Plaintiff fails to allege any similarly situated comparators who were treated differently. "In order to establish a violation of equal protection based on selective enforcement, the plaintiff must ordinarily show (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as[] intent to inhibit or punish the exercise of constitutional rights." *Sagaponack Realty, LLC v. Vill. of Sagaponack*, 778 Fed. Appx, 63, 64 (2d Cir. 2019) (affirmed granting of motion to dismiss) (internal citations omitted).

Neither Plaintiff's Complaint nor his ZBA application identified any similarly situated comparators. *See supra at* II.B; Ex. C, p. 6, n.5 ("The statement that there are other houses in the

26

neighborhood the size of what is being proposed was made by [Plaintiff's attorney], the Applicant, and those who testified in support of the application.  However, no such properties were identified and no evidence to substantiate the claim was introduced.…The Town's Senior Planner determined No other homes in the area appear to have been expanded to this magnitude.").

As such, Plaintiff's sixth cause of action must be dismissed, with prejudice.

**VI.      THE ARTICLE 78 CLAIM IS NOT PROPERLY BEFORE THIS COURT**

Plaintiff's Article 78 claim is misplaced.  Supplemental jurisdiction over Article 78 claims is highly disfavored in federal courts.

> Article 78 is a "novel and special creation of state law… 'designed to facilitate a summary disposition of the issues presented.' State law vests jurisdiction over Article 78 proceedings exclusively in New York Supreme Court. Federal courts routinely decline to exercise supplemental jurisdiction over claims subject to Article 78 review, citing the special solicitude afforded to this 'purely state procedural remedy."

*Lawtone-Bowles v. City of New York,* 2021 U.S. Dist. LEXIS 159883, *7-8 (S.D.N.Y. August 23, 2021) (internal citations omitted); *see also Birmingham v. Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("federal courts are loath to exercise jurisdiction over Article 78 claims.  Even where a plaintiff has one or more federal claims still alive[] the interests of judicial economy are not served by embroiling this court in a dispute over local laws and state procedural requirements."); *Jones-Bey v. Skarbo Stanislov*, 2024 U.S. Dist. LEXIS 130175, *8 (S.D.N.Y. July 23, 2024) ("As 'New York State has not empowered the federal courts to consider [Article 78] claims,' this Court must dismiss Plaintiff's challenge…for lack of subject matter jurisdiction, without prejudice to refiling in state court.").

If this Court is inclined to exercise jurisdiction over the Article 78 claim, it should also be dismissed for failure to state a claim.  *See Bell Atl.*, 550 U.S. at 555.  Plaintiff's bare allegations

27

that the ZBA's decision was arbitrary and capricious are inadequate to state an Article 78 claim.

*See* Ex. A, ¶259.  Therefore, Plaintiff's Article 78 claim should be dismissed from this action.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss the complaint with prejudice should be granted.

Dated: White Plains, New York
      March 12, 2026

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER LLP

_____
John M. Flannery, Esq.
Eliza M. Scheibel, Esq.
Alexander Lamonica, Esq.
1133 Westchester Ave
White Plains, NY 10604
(914) 323-7000
Eliza.scheibel@wilsonelser.com
Our File No.: 12129.00363

28

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing memorandum of law complies with the word-count limitations because the document, exclusive of the caption, table of contents, table of authorities, and signature block, contains 8739 words.

Eliza M. Scheibel, Esq.