Case No. 7:26-cv-00504-JGLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RABBI NAFTALI HOROWITZ,

                       Plaintiff,

v.

TOWN OF CLARKSTOWN, N.Y.,
TOWN COUNCIL OF THE TOWN OF
CLARKSTOWN, N.Y.,
ZONING BOARD OF APPEALS OF THE
TOWN OF CLARKSTOWN, N.Y.,

                       Defendants.
-------------------------------------------------------x


# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


Savad Churgin
Joseph Churgin (JC 6854)
Donna Sobel (DS 3267)
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
mail@savadchurgin.com

Storzer & Associates, P.C.
Roman Storzer (admitted *pro hac vice*)
1025 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 857-9766
storzer@storzerlaw.com


*Attorneys for Plaintiff*

TABLE OF CONTENTS

**PRELIMINARY STATEMENT**...........................................................................................1

**FACTUAL BACKGROUND**............................................................................................1

**PROCEDURAL HISTORY**..............................................................................................5

**STANDARD OF REVIEW**...............................................................................................5

**ARGUMENT**......................................................................................................................5

    I.      DEFENDANTS' JUSTICIABILITY ARGUMENTS SHOULD BE REJECTED..............5

           A.  Plaintiff's Claims are Ripe......................................................................................5

           B.  Plaintiff Need Not Allege Futility.........................................................................11

           C.  Plaintiff Has Standing to Challenge the ZBA Denial and Local Law 5.....................12

    II.     PLAINTIFF'S COMPLAINT STATES CLAIMS UNDER RLUIPA...........................17

           A.  Substantial Burdens, 42 U.S.C. § 2000cc(a)........................................................17

           B.  Nondiscrimination, 42 U.S.C. § 2000cc(b)(1).......................................................21

           C.  Exclusion and Limits, 42 U.S.C. § 2000cc(b)(3)(B)..............................................23

    III.    PLAINTIFF'S COMPLAINT STATES A FIRST AMENDMENT FREE EXERCISE CLAIM....................................................................................................................24

    IV.   PLAINTIFF STATES A FREEDOM OF ASSOCIATION CLAIM..............................25

    V.    PLAINTIFF STATES AND EQUAL PROTECTION CLAIM.....................................26

    VI.   THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S ARTICLE 78 CLAIM...........................................................................................................26

**CONCLUSION**.................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson Grp., LLC v. City of Saratoga Springs,*
805 F.3d 34 (2d Cir. 2015) ................................................................................................... 15

*Bais Brucha Inc. v. Twp. of Toms River,*
No. CV213239ZNQRLS, 2024 WL 863698 (D.N.J. Feb. 29, 2024) ...................................... 27

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................................... 8

*Bikur Cholim, Inc. v. Vill. of Suffern,*
664 F. Supp. 2d 267 (S.D.N.Y. 2009) ................................................................................. 10

*Brown v. Oneonta,*
221 F.3d 329 (2d Cir. 2000) ................................................................................................ 13

*Capitol Hill Baptist Church v. Bowser,*
496 F. Supp. 3d 284 (D.D.C. 2020) ..................................................................................... 17

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Borough of Litchfield, Connecticut,*
No. 3:09-CV-1419 (JCH), 2017 WL 5015624 (D. Conn. Nov. 2, 2017) ............................. 21

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n,*
768 F.3d 183 (2d Cir. 2014) ......................................................................... 20, 24, 28, 29

*Chinese Am. Citizens All. of Greater N.Y. v. Adams,*
116 F.4th 161 (2d Cir. 2024) ............................................................................................... 13

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,*
915 F. Supp. 2d 574 (S.D.N.Y. 2013) ....................................................................... 9, 14, 26

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,*
945 F.3d 83 (2d Cir. 2019) ....................................................................................... 14, 18, 25

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,*
No. 20-CV-6158 (KMK), 2021 WL 4392489 (S.D.N.Y. Sept. 24, 2021) ............................ 11

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l,*
790 F.3d 411 (2d Cir. 2015) .................................................................................................. 8

*Dean v. Town of Hempstead,*
527 F. Supp. 3d 347 (E.D.N.Y. 2021) ................................................................................. 15

*Dilaura v. Ann Arbor Charter Twp.,*
30 F. App'x 501 (6th Cir. 2002) ..................................................................................... 16, 19

*Fighting Finest, Inc. v. Bratton,*
95 F.3d 224 (2d Cir. 1996) .................................................................................................. 28

*Fortress Bible Church v. Feiner,*
734 F. Supp. 2d 409 (S.D.N.Y. 2010) ................................................................................. 28

*Fulton v. City of Phil.,*
593 U.S. 522 (2021) ............................................................................................................. 28

*Holt v. Hobbs,*
574 U.S. 352 (2015) ....................................................................................................... 17, 21

*Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.,*
258 F. Supp. 3d 405 (S.D.N.Y. 2017) ............................................................................. 9, 10

*Kennedy v. Bremerton Sch. Dist.*,
  597 U.S. 507 (2022) .......................................................................................... 27, 28
*Knick v. Twp. of Scott*,
  588 U.S. 180 (2019) ................................................................................................ 9
*Kravitz v. Purcell*,
  87 F.4th 111 (2d Cir. 2023) .................................................................................. 27
*Lamar Advert. of Penn, LLC v. Town of Orchard Park*,
  356 F.3d 365 (2d Cir. 2004) ................................................................................. 14
*Life Covenant Church, Inc. v. Town of Colonie*,
  No. 114CV1530LEKDJS, 2017 WL 4081907 (N.D.N.Y. Sept. 13, 2017) ............... 10
*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 15, 17
*MacDonald v. Safir*,
  206 F.3d 183 (2d Cir. 2000) ................................................................................. 14
*Murphy v. New Milford Zoning Comm'n*,
  402 F.3d 342 (2d Cir. 2005) ......................................................................... 9, 10, 14
*NYC C.L.A.S.H., Inc. v. City of New York*,
  315 F. Supp. 2d 461 (S.D.N.Y. 2004) .................................................................. 28
*Omar Islamic Ctr. Inc. v. City of Meriden*,
  633 F. Supp. 3d 600 (D. Conn. 2022) .................................................................. 15
*Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*,
  No. 19-CV-443 (KMK), 2021 WL 1226930 (S.D.N.Y. Mar. 31, 2021) ......... 11, 14, 18
*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*,
  450 F.3d 1295 (11th Cir. 2006) ............................................................................ 19
*Pyke v. Cuomo*,
  258 F.3d 107 (2d Cir. 2001) ................................................................................. 13
*Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*,
  584 F. Supp. 2d 766 (D. Md. 2008) ..................................................................... 19
*Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*,
  294 F.3d 35 (2d Cir. 2002) ................................................................................... 15
*Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*,
  613 F.3d 1229 (10th Cir. 2010) ............................................................................ 26
*Sagaponack Realty, LLC v. Village of Sagaponack*,
  778 Fed. Appx. 63 (2d. Cir. 2019) ....................................................................... 10
*Suitum v. Tahoe Reg'l Plan. Agency*,
  520 U.S. 725 (1997) .............................................................................................. 13
*Sunrise Detox V, LLC v. City of White Plains*,
  769 F.3d 118 (2d Cir. 2014) ......................................................................... 9, 10, 11
*Tabbaa v. Chertoff*,
  509 F.3d 89 (2d Cir. 2007) ................................................................................... 28
*Thomas v. Town of Mamakating*,
  792 Fed. Appx. 24 (2d Cir. Nov. 18, 2019) ......................................................... 10
*Vill. Green At Sayville, LLC v. Town of Islip*,
  43 F.4th 287 (2d Cir. 2022) .................................................................................... 9
*Washington v. Davis*,
  426 U.S. 229 (1976) .............................................................................................. 13

*Westchester Day Sch. v. Vill. of Mamaroneck,*
    417 F. Supp. 2d 477 (S.D.N.Y. 2006) ................................................................ 29
*Westchester Day Sch. v. Vill. of Mamaroneck,*
    504 F.3d 338 (2d Cir. 2007) ................................................ 11, 20, 22, 23
*Williams Island Synagogue, Inc. v. City of Aventura,*
    No. 0420257CVUNGAROBENAG, 2004 WL 1059798 (S.D. Fla. May 6, 2004) .............. 16
*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City,*
    473 U.S. 172 (1985) ........................................................................ 9, 12

## Statutes

28 U.S.C. § 1367 ............................................................................ 29
42 U.S.C. § 2000cc-2(a) .................................................................. 15
42 U.S.C. § 2000cc-5(7)(B) .............................................................. 21
42 U.S.C. § 2000cc(a) .................................................................. 19, 20
42 U.S.C. § 2000cc(a)(1)(A)-(B) ........................................................ 23
42 U.S.C. § 2000cc(b)(1) ................................................................ 23
42 U.S.C. § 2000cc(b)(2) ................................................................ 23
42 U.S.C. § 2000cc(b)(3)(B) ............................................................. 26
42 U.S.C. §§ 2000cc ....................................................................... 8
§ 2000cc–5(7)(A) .......................................................................... 21

## Rules

Federal Rule of Civil Procedure 12(b)(1) .................................................. 8
N.Y.C.P.L.R. § 7801 ...................................................................... 29
Rule 12(b)(6) .............................................................................. 8

## PRELIMINARY STATEMENT

Plaintiff Rabbi Naftali Horowitz ("Plaintiff" or "Rabbi Horowitz") submits this memorandum of law in opposition to the motion to dismiss submitted by Defendants Town of Clarkstown (the "Town"), N.Y., the Town Council of the Town of Clarkstown, N.Y. (the "Town Council"), and the Zoning Board of Appeals of the Town of Clarkstown, N.Y. (the "ZBA") (collectively, "Defendants").

## FACTUAL BACKGROUND

### Rabbi Horowitz's Religious Exercise

Rabbi Horowitz, an Orthodox Jew who invites members of the Orthodox Jewish community to pray with him in his home, owns a modest single-family detached residence in the Town. ECF No. 1 ¶ 3. There is currently no Orthodox Jewish synagogue located within walking distance of Rabbi Horowitz or the local Orthodox Jewish community. *Id.* However, the current size and layout of his home prevent him from fully engaging in his religious exercise. *Id.*

Rabbi Horowitz' Complaint alleges that the ZBA has "burdened Plaintiff's religious exercise by prohibiting Plaintiff from using his home for prayers with the local Orthodox Jewish community." *Id.* ¶ 199. For example, "Rabbi Horowitz sincerely believes that he must provide a location to lead prayers for Jews that live in the area and that this location must be within walking distance of the attendees" (*id.* ¶ 37) and "some of the most important components of the Jewish prayers (discussed above) are exclusive to communal prayer" (*id.* ¶ 30). Additionally, the "current layout and size of Rabbi Horowitz' home imposes significant burdens on his religious exercise, and on those who pray with him" (*id.* ¶ 43) and the "current space is not large enough to accommodate all those who seek to pray with him." *Id.* ¶ 44. Rabbi Horowitz needs additional

1

space to lead prayers that will accommodate all of those who need an Orthodox Jewish place to pray within his neighborhood.[1] *Id.* ¶ 45.

Plaintiff also cannot engage in various forms of religious exercise without the proposed addition. He "cannot offer facilities for teenage girls to comply with a religious program that they are required to do by their Orthodox Jewish schools to attend Shabbos morning prayers on Saturday mornings." *Id.* ¶ 57. "The physical limitations of Rabbi Horowitz' home has also led to severe overcrowding during the Jewish High Holidays, when many women attend." *Id.* ¶ 58. "Rabbi Horowitz believes that it is important that Jewish children begin attending prayers, so that they can become comfortable in the synagogue and become ready to take on their adult religious responsibilities" and he "seeks to offer additional religious programming for children during the prayers, but cannot do so now due to lack of space." *Id.* ¶¶ 63-67. "Rabbi Horowitz also seeks to offer adult religious education, such as religious lectures on Shabbos afternoons and on Jewish holidays, but cannot do so now due to a lack of space." *Id.* ¶ 70. There is also no mikveh (Jewish ritual bath) on the Property. "Jewish community members are unable to go to a mikveh on the Sabbath or holidays." *Id.* ¶¶ 59-62.

<u>Rabbi Horowitz's Variance Application and the ZBA Denial</u>

In order to address these burdens on Rabbi Horowitz' religious exercise, after the Town Supervisor advised Plaintiff to apply for an area variance to build the addition necessary for his

---

[1] Additionally, overcrowding in the current space disrupts the worshipful atmosphere with myriad distractions." *Id.* ¶ 46. For example, "[c]hildren . . . cannot access the restroom facilities without significantly disrupting the ongoing prayers (*id.* ¶ 50) and "[t]here is no dedicated space for women to pray at the Property" (*id.* ¶ 51) as is required for Orthodox Jews. "Currently, all attendees at the prayers utilize the same entrance, which causes problems with women and men crossing into the same area and detracts from the worship experience." *Id.* ¶ 54. "Women who wish to attend prayers must sit in Rabbi Horowitz's dining room and watch them through the doorway." *Id.* ¶ 55.

prayer services and related religious activity, Plaintiff applied for such variance to the ZBA. *Id.* ¶ 4. The ZBA denied Rabbi Horowitz's application. *Id.* ¶ 5.

Defendants' assertion that the "ZBA Took No Final Position" (Memorandum of Law in Support of Clarkstown Defendants' Motion to Dismiss ("DM") (ECF No. 22) at 9) is false. The ZBA issued a 21-page final decision denying Rabbi Horowitz's variance application. The ZBA decision stated "[t]he Clarkstown Board of Appeals does hereby DENY the application of NAFTALI HOROWITZ for a variation from the requirements of Article Ill, Section 290-11 B, Attachment 31, Table 12 (General Bulk Regulations), Group J, Column 4 (Max Floor Area Ratio), Column 8 (Required Side Yard), and Column 12 (Max Lot Coverage), of the Clarkstown Zoning Code for the construction of an addition to a single family dwelling." ECF No. 21-3 at 23.

The ZBA also adopted a resolution stating "[i]n view of the foregoing and the testimony and documents presented it is: RESOLVED by the Clarkstown Board of Appeals that the application for the requested [Floor Area Ratio], lot coverage, and sideyard setback area variances is DENIED. On a Motion Edward Mistretta, Seconded by Mr. Thomas Heim and carried 5:0 the foregoing resolution was passed." ECF No. 21-3 at 23.

The ZBA denied Rabbi Horowitz's application on arbitrary grounds, failing to apply the applicable law, treating him differently and worse than other applicants, and suggesting that Plaintiff should move his home elsewhere or seek to open a place of worship elsewhere, which is a separate land use subject to much more onerous restrictions under the Town's Code.

At the hearing at which Rabbi Horowitz's variance was considered, his attorney requested that the ZBA adjourn the hearing until the next scheduled meeting in order to address the ZBA's concerns. The ZBA refused this request. ECF No. 21-3 at 16-17; ECF No. 1 ¶¶ 130-136. As set forth in the accompanying declaration of Rabbi Horowitz's attorney, this departed from the ZBA's

3

norm of continuing public hearings when other applicants had come before the ZBA. Declaration of Joseph Churgin ("Churgin Dec.") ¶¶ 4-6. It is common practice in the Town of Clarkstown and in the surrounding municipalities in Rockland County, especially on the first appearance before a Zoning Board, for members of the Board and the public to give their input on a project and the applicant to ask to adjourn the hearing to try and incorporate comments into the project. The Zoning Board will typically grant such a request for an adjournment. *Id.* ¶¶ 4-5. At no point did the Zoning Board state what type of addition would be acceptable such that the Zoning Board would grant the area variance. *Id.* ¶ 8.

### The Town Law Prohibiting Houses of Worship on Town Roads

The Town also adopted a zoning code requirement mandating that places of worship in residential districts within its jurisdiction may only be located on State and County roads, which are only a small fraction of the total number of roads within the Town ("Local Law 5"). ECF No. 1 ¶¶ 84, 170. There are no State or County roads within reasonable walking distance of Rabbi Horowitz's home and the homes of members of the local Orthodox Jewish community, who are forbidden by their religious beliefs from driving on the Sabbath. ECF No. 1 ¶ 211. Attempting to walk to the nearest such roadway from Rabbi Horowitz' home and neighborhood would be particularly dangerous. ECF No. 1 ¶ 212.

### Community Animus Against the Orthodox Jewish Community

These actions have been taken against a backdrop of hostility and discrimination against Orthodox Jews in the Town, with the Town having gone so far as to interfere with and acquire another property that was under contract to be purchased by an Orthodox Jewish school. Comments describing fear and hostility to Orthodox Jews and statements opposed to that community living and worshipping in Clarkstown (including "[i]t's a cult. Not a religion. Should

4

not exist") were made at public meetings, to news reports, and on local social media pages. Local officials met with an organization founded upon such animus toward the Orthodox community. *See generally* ECF No. 1 ¶¶ 8, 180-182.

## PROCEDURAL HISTORY

Rabbi Horowitz filed this action to redress violations of his civil and constitutional rights as protected by the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc, *et seq.* ("RLUIPA"), and the New York Civil Practice Law and Rules Article 78.

## STANDARD OF REVIEW

In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1), "[t]he plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that it has standing to sue. In assessing the plaintiff's assertion of standing, we accept as true all material allegations of the complaint[] and . . . construe the complaint in favor of the complaining party. In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (internal quotations and citations omitted, alterations in original). When a plaintiff alleges sufficient facts to state a claim for relief, plausible on its face, the claim shall survive dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

## I.    DEFENDANTS' JUSTICIABILITY ARGUMENTS SHOULD BE REJECTED.

### A.    Plaintiff's Claims are Ripe.

Defendants first argue that, despite receiving a final and complete denial of Plaintiff's variance by the ZBA, Plaintiff's claims challenging the same are somehow not "ripe" for review.

5

Memorandum of Law in Support of Clarkstown Defendants' Motion to Dismiss ("DM") (ECF No. 22) at 9-12. This argument is easily rejected.

First, Defendants are wrong that the denial of a variance is insufficient to confer this Court with subject matter jurisdiction over Plaintiff's claims. Plaintiff went through the appropriate procedure as instructed by the Town[2] to obtain a variance to permit him to expand his home in order to allow him to engage in religious exercise (ECF No. 1 ¶¶ 43-70, 85-88), and that application was denied in a final decision by the ZBA. Nothing more is necessary for Plaintiff's claim to be "ripe." *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 190-91 (1985) ("[I]n the face of [the developer's] refusal to follow the procedures for requesting a variance" the developer had "not yet obtained a final decision regarding how it [would] be allowed to develop [the] property."), *overruled on other grounds by Knick v. Twp. of Scott*, 588 U.S. 180 (2019); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005) ("requiring a meaningful variance application as a prerequisite to federal litigation"); *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014) (claims not ripe because plaintiff "failed" to "'submit[] at least one meaningful application for a variance.'" (quoting *Williamson Cnty.*, 473 U.S. at 348)).

Submitting "one meaningful application" has been repeatedly stated to be sufficient for ripeness purposes within this Circuit. *See Vill. Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287, 296 (2d Cir. 2022); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013), *aff'd*, 945 F.3d 83 (2d Cir. 2019); *Islamic Cmty. Ctr. for*

---

[2] The Town's Supervisor told Rabbi Horowitz to apply for an area variance in order to allow him to have adequate space for Jewish prayers. ECF No. 1 ¶¶ 73-77; *see id.* ¶ 78 ("Rabbi Horowitz was advised by the Town that he could continue to have prayers at the Property on Shabbos as long as he received the area variances to increase the size of his house to make room for all of his community members to pray.").

6

*Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 416 (S.D.N.Y. 2017) (same), *aff'd*, 742 F. App'x 521 (2d Cir. 2018). Plaintiff's Complaint alleges that such an application was made and decided upon; Defendants do not contradict this nor do they argue that the application was not "meaningful." *See Vill. Green At Sayville, LLC*, 43 F.4th at 297 (holding that claims were ripe for review where "[t]here is no question that Village Green submitted a 'meaningful application' to municipal agencies").

This Court previously rejected an argument similar to that being made by the Town in *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267 (S.D.N.Y. 2009). There, a village argued plaintiff's claim was not ripe because the "application for a variance before the Zoning Board offered perfunctory and insufficient evidence." *Id.* at 274. The Court easily rejected this position:

> What matters at this stage is whether private plaintiffs adequately pleaded that their variance was denied. That, they did. . . .
>
> . . . . Bikur Cholim sought a use variance from the Zoning Board of Appeals, which was denied.
>
> A case is ripe when the court "can look to a final, definitive position from a local authority to assess precisely how they can use their property." *Murphy,* 402 F.3d at 347. The Court can look at the Zoning Board of Appeals' decision as a definitive ruling on how Bikur Cholim can use its property. It is the denial of the application that serves as the basis for jurisdiction before the Court.

*Id.* at 275. There is no requirement to repeatedly apply for multiple variances until a zoning board might decide to grant one, and Defendants cite no authority that supports such a position.

Instead, the authorities relied on by the Town all have one thing in common: They do not involve the denial of a variance or similar relief, as happened here. *See Murphy*, 402 F.3d at 345 (no application for variance); *Sagaponack Realty, LLC v. Village of Sagaponack*, 778 Fed. Appx. 63, 64 (2d. Cir. 2019) (no decision at all); *Thomas v. Town of Mamakating*, 792 Fed. Appx. 24, 27 (2d Cir. Nov. 18, 2019) (plaintiff "fail[ed] to apply for a variance"); *Islamic Cmty. Ctr. for Mid Westchester*, 742 Fed. Appx. at 524 ("ICCMW failed to apply for the 'certificate of

7

appropriateness' that would, if granted, enable them to pursue their construction projects"); *Life Covenant Church, Inc. v. Town of Colonie*, No. 114CV1530LEKDJS, 2017 WL 4081907, at *7 (N.D.N.Y. Sept. 13, 2017) ("LifeChurch appears to have abandoned the amendment process in favor of seeking relief in this Court."); *Sunrise Detox V, LLC*, 769 F.3d at 124 (plaintiff "fail[ed] to pursue a variance"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 20-CV-6158 (KMK), 2021 WL 4392489, at *9 (S.D.N.Y. Sept. 24, 2021), *aff'd*, No. 21-2822, 2022 WL 1697660 (2d Cir. May 27, 2022) (no variance applied for); *Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*, No. 19-CV-443 (KMK), 2021 WL 1226930, at *10 (S.D.N.Y. Mar. 31, 2021) ("Plaintiffs do not allege that they submitted a development plan for approval or sought a variance."), *on reconsideration,* No. 19-CV-443 (KMK), 2021 WL 3605041 (S.D.N.Y. Aug. 13, 2021).

Second, the ripeness of Plaintiff's claims is especially underscored by the ZBA's refusal to allow Plaintiff to attempt to address the ZBA's concerns. ECF No. 1 ¶ 130. Rabbi Horowitz' attorney asked for an adjournment to attempt to "work out compromises . . . ." *Id.* ¶¶ 130-132. ZBA refused this request. ECF No. 1 ¶¶ 132-136; Churgin Dec. ¶¶ 6-8. This "surpris[ing]" action was contrary to the ZBA's normal practice, as it "will typically grant such a request for an adjournment." *Id.* ¶¶ 4-5. Nor did the ZBA ever state what type of addition would be "acceptable." *Id.* ¶ 8.

The Town's justification now that "Plaintiff could submit a modified application" (DM at 11) rings hollow. While the denial by itself renders Plaintiff's claims ripe, even if the Town's flawed legal analysis were correct–which it is not–Defendants' position is betrayed by the fact that the ZBA outright refused to engage in "the kind of give-and-take negotiation that often resolves land use problems, . . . ." *Sunrise Detox V, LLC*, 769 F.3d at 124. *Cf. Westchester Day Sch. v.*

8

*Vill. of Mamaroneck*, 504 F.3d 338, 346 (2d Cir. 2007) ("The ZBA had the opportunity to approve the application subject to conditions intended to mitigate adverse effects on public health, safety, and welfare that might arise from the project. Rather, on May 13, 2003 the ZBA voted 3–2 to deny WDS's application in its entirety.").

Third, the Town's argument fails because it suggests that an application for a smaller addition may have been considered by the ZBA (DM at 11); however, that is not the relief that the Plaintiff sought. Rather, the modest 1,447-square foot addition applied for was "necessary for Rabbi Horowitz's prayer services and related religious activity, . . . ." ECF No. 1 ¶¶ 4, 106. The ZBA had "arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson Cnty.*, 473 U.S. at 191. The ripeness doctrine does not require Rabbi Horowitz to continue to apply for different applications, *ad infinitum*, particularly where the ZBA refused to provide any information about what changes it would find acceptable. The absurdity of Defendants' position is demonstrated by the fact that claims could *never* become ripe if the standard is that they remain unripe so long as "Plaintiff could submit a modified application," as any application could be endlessly modified.

Fourth, Defendants' argument that Plaintiff should have to apply for a *use* variance is wholly disingenuous. Although they do not suggest what "use" Plaintiff should have applied for, he did not seek to change his use from a single-family home to, presumably, a house of worship. Applying for inappropriate and unnecessary relief is not required to establish ripeness. This is further established by the "Town Supervisor advis[ing] Plaintiff to apply for an <u>area variance</u> to build the addition necessary for Rabbi Horowitz's prayer services and related religious activity, . . . ." ECF No. 1 ¶ 4 (emphasis added); *id.* ¶ 76 (same); *see id.* ¶ 125 ("Town Supervisor Hoehmann previously told Rabbi Horowitz that . . . the use would not change from a single-family detached

9

residence to a place of worship, as long as he lives in the house"). The Property would continue to be used as the Rabbi's home for him and his family, where he would also lead prayers on Friday evenings and Saturdays. He does not seek to change the "use" of his property. *See also id.* ¶ 155 ("place of assembly for less than 50 people under New York law is considered an accessory use to a main use, so that a use variance would not be required."); *id.* ¶ 123 (Rabbi Horowitz' attorney informed ZBA of same); *id.* ¶ 166 (no use variance is required); *id.* ¶ 167 (Supervisor Hoehmann told Rabbi Horowitz that a use variance would not be necessary).

Finally, Plaintiff's facial challenges to Local Law No. 5 of 2016 are immediately ripe. ECF No. 1 ¶¶ 232, 243 (challenging laws "on their face and as applied"). "Such facial challenges to regulation[s] are generally ripe the moment the challenged regulation or ordinance is passed, . . . ." *Suitum v. Tahoe Reg'l Plan. Agency,* 520 U.S. 725, 736 n.10 (1997) (internal quotation marks and citation omitted). That law was adopted with discriminatory motivation against Orthodox Jews and against religious land uses generally. ECF No. 1 ¶¶ 169-186. Laws that were adopted with discriminatory motivation can be challenged on their face:

> A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

*Pyke v. Cuomo,* 258 F.3d 107, 109 (2d Cir. 2001) (quoting *Brown v. Oneonta,* 221 F.3d 329, 337 (2d Cir. 2000). *See also Washington v. Davis,* 426 U.S. 229, 240-41 (1976) (same); *Chinese Am. Citizens All. of Greater N.Y. v. Adams,* 116 F.4th 161, 176 (2d Cir. 2024) ("Once discriminatory motive is established, or as here, assumed, a statute's facial neutrality becomes immaterial"). Plaintiff alleges that Local Law No. 5 was adopted with discriminatory animus. ECF No. 1 ¶¶ 171, 173, 188-189, 192, 214, 216. Plaintiff also alleges that the Local Law has discriminatory effect. *Id.* ¶¶ 210-213, 220; *see infra* § II(C).

10

The Second Circuit held that such laws may be challenged without any application being made:

> The first group of claims is that the Village adopted the four challenged laws at least in part for the purpose of discriminating against Tartikov on the basis of religion and that those laws stigmatized the plaintiffs. "[S]tigmatizing members of [a] disfavored group as innately inferior and therefore as less worthy participants in the political community" – *i.e.*, discrimination – is an actual and concrete injury sufficient to confer standing. The "'right invoked is that of equal treatment,' [and] the appropriate remedy is a mandate of *equal* treatment."

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 945 F.3d 83, 110 (2d Cir. 2019) (footnotes omitted, alterations and emphasis in original). *See also Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 374 (2d Cir. 2004) (plaintiff "need not have first sought and been denied *any* permit prior to filing a facial challenge."); *MacDonald v. Safir,* 206 F.3d 183, 189 (2d Cir. 2000) (same).

Defendants's only argument is that facial claims for *damages* may be subject to the final decision requirement. DM at 11 (citing *Orthodox Jewish Coal. of Chestnut Ridge*, No. 19-CV-443 (KMK), 2021 WL 1226930 at *11. However, Plaintiff also seeks injunctive relief (ECF No. 1 at 40). Defendants fail to note the portion of the Court's opinion in *Orthodox Jewish Coalition of Chestnut Ridge* restating that facial challenges seeking injunctive relief are immediately ripe. *Orthodox Jewish Coal. of Chestnut Ridge*, No. 19-CV-443 (KMK), 2021 WL 1226930, at *12 ("This is because facial challenges generally seek injunctive relief.").

Defendants' "ripeness" arguments should be rejected.


B.    Plaintiff Need Not Allege Futility.

Defendants next make a "futility" argument (DM at 12), which is misplaced as it is an "exception to the final decision requirement, . . . ." *Congregation Rabbinical Coll. of Tartikov,*

11

915 F. Supp. 2d at 601 (citing *Murphy*, 402 F.3d at 349). No such exception is necessary here, where there was a final decision by the ZBA, as discussed above.

      C.      <u>Plaintiff Has Standing to Challenge the ZBA Denial and Local Law 5.</u>

Defendants' next argument that Plaintiff lacks "standing" to challenge the ZBA's denial because he can continue to suffer the "significant burdens on his religious exercise" that were present before the denial (ECF No. 1 ¶ 43) borders on the frivolous. DM at 12-13. First, RLUIPA states that "[s]tanding to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution." 42 U.S.C. § 2000cc-2(a). It also states: "The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." *Id.* § 2000cc-5(7). Plaintiff's Complaint alleges in detail (*see infra*, § II(A)) how the ZBA's denial of his application to build an addition to facilitate home worship burdens his religious exercise. *See Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 46 (2d Cir. 2015) ("[D]enial of an entity's special use permit application . . . is an injury sufficient in itself to confer standing."); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 n.2 (2d Cir. 2002) ("[The plaintiff] suffered an injury through the denial of its special-use permit application; it therefore has individual standing."); *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 398 (E.D.N.Y. 2021) ("Because Plaintiffs are the direct subjects of the government action denying the use permits and variances, Plaintiffs have plausibly alleged the existence of sufficient injury to warrant judicial intervention.").

In order to have constitutional standing under Article III to maintain a cause of action, a plaintiff must show an injury in fact, traceable to the defendants' conduct, that can be redressed by

a judgment of the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants appear to only address the first element, an injury in fact. DM at 12-13. The denial of a variance to permit Plaintiff to fully exercise his religion is certainly an injury in fact. *See Omar Islamic Ctr. Inc. v. City of Meriden*, 633 F. Supp. 3d 600, 615 (D. Conn. 2022) (holding that plaintiff had standing to challenge denial of permit where plaintiff alleged that "it was forced to spend time and money both applying for the permit that was denied" and that "it was discriminated against in the process of seeking the permit."); *Dilaura v. Ann Arbor Charter Twp.*, 30 F. App'x 501, 506 (6th Cir. 2002) (plaintiff had standing to challenge denial of variance); *Williams Island Synagogue, Inc. v. City of Aventura*, No. 0420257CVUNGAROBENAG, 2004 WL 1059798, at *3 (S.D. Fla. May 6, 2004) (plaintiff had standing to challenge denial of conditional use application where its "alleged injury consists of being unable to worship in a temple whose size and location accommodates the religious beliefs of its members").

The Town's assertion that "Plaintiff has not suffered an injury, as he still maintains the same rights as he did prior to his variance application" (DM at 21) is contrary to the allegations made in the Complaint. The Complaint alleges that the ZBA has "burdened Plaintiff's religious exercise by prohibiting Plaintiff from using his home for prayers with the local Orthodox Jewish community," which is an important part of his religious exercise. ECF No. 1 ¶ 199, 223, 225-226.

As set forth above, the Complaint specifically alleges that Rabbi Horowitz sincerely believes that he must provide a location to lead prayers for Jews that live in the area and that this location must be within walking distance of the attendees; that some of the most important components of the Jewish prayers are exclusive to communal prayer; that the current layout and size of Rabbi Horowitz' home imposes significant burdens on his religious exercise, and on those who pray with him. *See* Factual Background, *supra*. Plaintiff also suffered discrimination during

13

the land use process. *See infra*, § II(B); ECF No. 1 ¶ 215 ("Board's decision denying the Application was motivated by animus toward Orthodox Jews."); *id.* ¶ 218 ("Statements by ZBA members and local residents to whom the ZBA was responsive indicated hostility toward the Orthodox Jewish community."). Plaintiff additionally "suffered financial damages as a result of the Defendants' laws and their application to Plaintiff. These include the professional costs incurred in pursuing the application." ECF No. 1 ¶ 224. These allegations constitute harms that Rabbi Horowitz has suffered and will continue to suffer as a result of Defendants' rejection of his variance application. This injury is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).

Defendants' argument that "[p]rior to applying for an area variance from the zoning code, Plaintiff used a portion of his single-family home on the Property to host Jewish prayer for members of his community . . . and the ZBA decision had no effect on this use" (ECF No. 22 at page 21 of 37) misses the point completely. The Supreme Court has rejected such an argument; the fact that he can still engage in *some* activity is irrelevant to the fact that his religious exercise continues to be impeded in various ways based upon the denial of the variance. "RLUIPA's "substantial burden" inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015). *See also Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 294 (D.D.C. 2020) (rejecting District of Columbia's argument that "Church could 'hold multiple services, host a drive-in service, or broadcast the service online or over the radio,' as other faith communities in the District have done," citing *Holt*, 574 U.S. at 361-

14

62). Regardless, the denial of the variance, the discrimination suffered, and the costs incurred by themselves establish standing under Article III.

Plaintiff also has standing to challenge Local Law 5. Defendants' argument that Plaintiff has never applied for nor been denied a variance from Local Law 5 (ECF No. 22 at page 21 of 37) is without merit. A party "has standing to pursue equal protection claims under the Fourteenth Amendment of the federal and New York constitutions as well as nondiscrimination and equal terms claims under RLUIPA" based on the implementation and adoption of the law, even if the applicant has not made a land use application under that law, *Congregation Rabbinical Coll. of Tartikov,*, 945 F.3d at 110 (no application made); *Orthodox Jewish Coal. of Chestnut Ridge*, No. 19-CV-443 (KMK), 2021 WL 1226930 at *14 ("discrimination . . . is an actual and concrete injury sufficient to confer standing" (quoting *Congregation Rabbinical Coll. of Tartikov*, 945 F.3d at 110). This is what is alleged here. ECF No. 1 ¶ 214 ("The Town's adoption of the State/County Road Law was motivated by animus toward religious institutions in general and to Orthodox Jews in particular."); *see generally id.* ¶¶ 169-192 (describing history of antisemitism in Town, including with respect to Local law 5); *infra* § II(B). The Town Supervisor has also admitted that Local Law 5 was adopted in order to prevent religious institutions from locating in residential areas. ECF No. 1 ¶ 171. And the ZBA discussed Local Law 5 by suggesting that Rabbi Horowitz obtain property on a county road rather than applying for the variance for the house that he already owns. ECF No. 1 ¶ 193. In *Tartikov*, the Second Circuit held that a plaintiff adequately alleged Article III standing under RLUIPA for its Nondiscrimination and Equal Terms claims against zoning ordinances that had not yet been applied to it because stigmatizing the plaintiffs "as innately inferior and therefore as less worthy participants in the political community—i.e. discrimination— is an actual and concrete injury to confer standing." 945 F.3d at 110; *see also Orthodox Jewish*

15

*Coal. of Chestnut Ridge*, No. 19-CV-443 (KMK), 2021 WL 1226930, at *14 ("discrimination . . . is an actual and concrete injury sufficient to confer standing" (alteration in original) (quoting *Tartikov*, 945 F.3d at 110)).

While Plaintiff disagrees that his use is a "Place of Worship," the Defendants have apparently switched course from the Town Supervisor's original instructions acknowledging that the use would remain a single family home with accessory religious activity, as permitted by New York law, to a suggestion that it would become a place of worship subject to Local Law 5, which would require a use variance. ECF No. 1 ¶¶ 123, 150, 165; DM at 11 ("While Plaintiff filed an application for area variances, he did not file an application for a use variance."). This about-face confers standing on Plaintiff to challenge a zoning restriction that prohibits his use. *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1304 (11th Cir. 2006) (In RLUIPA case, holding that "a zoning restriction on property use constitutes an injury in fact."); *Dilaura*, 30 F. App'x at 506 (plaintiff had standing to challenge zoning ordinance that prohibited religious use); *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766, 791 (D. Md. 2008) (plaintiff had standing to challenge ordinance because it "has suffered an injury in fact (inability to build a church and related structures on the Property, infringement of its rights under the Equal Protection Clause and RLUIPA, monetary damages from its expenditures on fruitless applications, *inter alia* )"), *aff'd*, 368 F. App'x 370 (4th Cir. 2010). Defendants' arguments at page 13 of their memorandum mistakenly conflate the issues of ripeness and standing. *See, e.g.,* DM at 13 ("He has never applied for nor been denied a variance from the Local Law"). While such challenge is ripe for the reasons described *supra*, Local Law 5 certainly injures Plaintiff by presently restricting the use of his property for religious exercise.

16

## II.    PLAINTIFF'S COMPLAINT STATES CLAIMS UNDER RLUIPA.

### A.    Substantial Burdens, 42 U.S.C. § 2000cc(a).

As described above, the ZBA's denial prevents Rabbi Horowitz from engaging in religious exercise as he sincerely believes he should.  This is the "implement[ation of] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, . . . ."  42 U.S.C. § 2000cc(a).  Defendants do not dispute that they are "government[s]," that a "land use regulation" was imposed, or that Rabbi Horowitz seeks to engage in "religious exercise." *Id.*; DM at 14-16.  Defendants' argument is limited to whether the Plaintiff's allegations state a claim that the burden on his religious exercise caused by the ZBA's denial was "substantial."  They clearly do.

Defendants fail to state the correct standard for whether a burden is "substantial" under RLUIPA in the Second Circuit.  In *Westchester Day School v. Village of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007) ("*WDS*"), the Court of Appeals applied a range of factors to conclude that a Village's denial of a permit to allow a Jewish day school to expand its facilities constituted a substantial burden on the organization's religious exercise:  that the facilities were no longer adequate to attract and retain students interested in a dual religious and secular education, *id.* at 345, 349; that there were "no quick, reliable, or economically feasible alternatives," *id.* at 352; that the denial was a final denial, as opposed to a conditional denial requesting that the applicant make adjustments, *id.* at 349; that there was a "close nexus between the coerced or impeded conduct and the institution's religious exercise," *id.* at 349; and that the government decision makers acted in an "arbitrary and capricious" manner in their evaluation of the state's health, safety, and welfare interests.  *Id.* at 351.  Subsequently, in *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 195-96 (2d Cir. 2014), *cert. denied*, 575 U.S. 963 (2015), it

17

clarified that that the list of criteria set forth in *Westchester Day School* was meant to be non-exhaustive and, moreover, that no single criterion should be considered dispositive. Rather, the Second Circuit held, the factors used in *Westchester Day School* were intended to be "some of the factors that may be considered to determine whether a substantial burden is imposed." *Id.* at 195.

Defendant ignores this analysis, recommending instead that the Court adopt a standard that is explicitly refuted by RLUIPA itself, that Plaintiff must allege that the size of the expansion is "necessary" for Rabbi Horowitz' religious exercise:

> [T]here are no non-conclusory allegations that the requested size of the expansion is <u>necessary to Plaintiff's religious practice</u>.

DM at 16 (emphasis added). However, RLUIPA specifically states that the activity sought need not be necessary. First, it includes within its definition of religious exercise that "The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B). Rabbi Horowitz' proposed addition falls squarely within that definition, and his "use [and] building" for religious exercise therefore *is* religious exercise itself, which was prevented by the ZBA. Second, contrary to Defendants' suggested standard,

> The term "religious exercise" includes any exercise of religion, <u>whether or not compelled by, or central to, a system of religious belief</u>.

*Id.* § 2000cc-5(7)(A) (emphasis added); *see also Holt*, 574 U.S. at 353 ("RLUIPA, however, applies to religious exercise regardless of whether it is 'compelled.' § 2000cc–5(7)(A)."); *Chabad Lubavitch of Litchfield Cnty., Inc. v. Borough of Litchfield, Connecticut*, No. 3:09-CV-1419 (JCH), 2017 WL 5015624, at *18 (D. Conn. Nov. 2, 2017) ("This broad definition explicitly rejects the idea that courts should evaluate religious exercise based on its importance to a religion."). Also relevant is RLUIPA's rule of statutory construction that it "shall be construed in favor of a broad

18

protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." *Id.* § 2000cc-3(g). Defendants' suggested cabining of protected religious exercise to only what is "necessary" violates this rule.

Of all of the substantial burden factors described by the Second Circuit in *Westchester Day School*, Defendants' argument only relates (in a deeply flawed way) to one of them: whether the ZBA's "denial was final . . . ." 504 F.3d at 352; *see* DM at 15-16 (suggesting that the ZBA was willing to work with Plaintiff). Such a denial "may represent a substantial burden . . . where a zoning board's stated willingness to consider a modified plan is disingenuous." *WDS,* 504 F.3d at 349. Here, the ZBA refused to allow Rabbi Horowitz even to attempt to address its concerns. At the hearing, his attorney "stated they have heard all the comments and would like to adjourn this public hearing until the next scheduled meeting to see if they can work something out." ECF No. 21-3 at 16. However, the Board Chairman refused, stating: "There are a lot of people, from both sides that came out tonight to testify and it would not be fair to not to vote." *Id.* at 17. This is very similar to the situation presented in *WDS*:

> First, we observe that the ZBA could have approved the application subject to conditions intended to mitigate adverse effects on public health, safety, and welfare. Yet the ZBA chose instead to deny the application in its entirety. . . . Second, were WDS to prepare a modified proposal, it would have to begin the application process anew. This would have imposed so great an economic burden as to make the option unworkable. Third, the district court determined that ZBA members were not credible when they testified they would give reasonable consideration to another application by WDS. When the board's expressed willingness to consider a modified proposal is insincere, we do not require an institution to file a modified proposal before determining that its religious exercise has been substantially burdened.

504 F.3d at 352. Similarly here, any willingness to consider a modified proposal is insincere (not to mention burdensome to require Plaintiff to start anew) when the ZBA refused to even follow its own normal practices to grant an adjournment to allow Plaintiff to attempt to address its concerns.

19

Furthermore, telling Rabbi Horowitz to reduce the size of his addition in a manner that would be insufficient to accommodate his religious exercise would itself burden such exercise. *WDS*, 504 F.3d at 349 ("Of course, a conditional denial may represent a substantial burden if the condition itself is a burden on free exercise"). As the Complaint alleges, the modest addition was "necessary for Rabbi Horowitz's prayer services and related religious activity, . . . ." ECF No. 1 ¶ 4

Each of the other relevant factors also squarely favor the Plaintiff. As described above, Rabbi Horowitz' home is no longer adequate for his prayer activities. *See* ECF No. 1 ¶¶ 43-70. He has "no quick, reliable, or economically feasible alternatives," *WDS* at 352. ECF No. 1 ¶¶ 207, 225 (no "alternative options for Plaintiff's activities"); *id.* ¶¶ 193-197, 210-213 (Local Law 5 renders religious exercise impracticable); ECF No. 21-3 at 22 ("Mr. Churgin stated that there was no place within the community to pray other than the Applicant's house."); *id.* at 11 ("this is the only way to make it work"). There is a clear "nexus" between the denied application and the institution's religious exercise, as the purpose of the addition is solely to accommodate Rabbi Horowitz's prayer activities. ECF No. 1 ¶¶ 71-78; *id.* ¶ 88 (explaining that the addition would be used for religious exercise), *id.* ¶ 206. Finally, the Complaint alleges that government decision makers acted in an "arbitrary and capricious" manner. As discussed above, Plaintiff was instructed early on to apply for an area variance in order to accommodate his religious needs and that this would not change the use from a single-family detached residence to a place of worship, only to be told–after expending significant time and expense pursuing such application–just the opposite.

Defendants present no argument that the ZBA's denial was the least restrictive means of achieving a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1)(A)-(B). Plaintiff states a claim under RLUIPA's Substantial Burdens provision.

20

B.    Nondiscrimination, 42 U.S.C. § 2000cc(b)(1).

Defendants next argue that Plaintiff fails to state a RLUIPA Nondiscrimination claim pursuant to 42 U.S.C. § 2000cc(b)(2). Their assertion that the Complaint does not sufficiently allege discriminatory intent is simply false. While they admit that "courts assessing discriminatory intent . . . have considered a multitude of factors, including the series of events leading up to a land use decision, the context in which the decision was made, whether the decision or decisionmaking process departed from established norms, statements made by the decisionmaking body and community members, reports issued by the decisionmaking body, whether a discriminatory impact was foreseeable, and whether less discriminatory avenues were available" as held by the Second Court in *Chabad Lubavitch of Litchfield Cnty.*, 768 F.3d at 198, DM at 17, they fail to acknowledge the very real and troubling background of anti-Orthodox Jewish animus in the Town, the ZBA's differential treatment of Plaintiff, and its responsiveness to local residents, as demonstrated by substantial allegations in Plaintiff's Complaint.

The Complaint alleges ample particularized evidence of these factors. For example, the series of events leading up to the decision and the context of the decision both occurred in the backdrop of the Town's actions in the *Ateres* lawsuit. In that lawsuit, an Orthodox Jewish school alleged that Clarkstown engaged in discriminatory efforts to prevent its Orthodox Jewish school from closing on its purchase of a property that was formerly a Baptist school and church. Among the allegations was the fact that Clarkstown colluded with local residents hostile to Orthodox Jews by meeting to devise a plan to prevent Ateres Bais Yaakov's purchase of the Baptist school's property. And of specific relation to this lawsuit is that the *Ateres* lawsuit alleged that the same ZBA refused to hear the Orthodox Jewish school's appeal of the Clarkstown Building Department's denial of its request for a building permit and, in the alternative, its application for

21

an area variance. ECF No. 1 ¶¶ 174-181. Various statements made by Clarkstown officials and the local residents to whom they were responsive indicate significant bias against Orthodox Jews. *Id.* ¶¶ 180-182. The Anti-Defamation League ("ADL"), an independent organization whose mission is to fight antisemitism and bias, submitted an amicus curiae brief that recounts the history of religious animus in Clarkstown and in Rockland County towards Orthodox and Hasidic Jews. ECF No. 1 ¶¶ 184-185. ADL also described the responsiveness of Clarkstown officials to complaints and collaboration with community groups specifically created to prevent the growth of the Orthodox Jewish population. ECF No. 1 ¶ 186.

The Complaint also alleges that the decision in this case departed from established procedural norms. In addition to the Town's bait-and-switch tactic with respect to the area/use variance issue described above, the Town delayed consideration of Rabbi Horowitz's application. More than two months passed before the Deputy Building Inspector even responded to Rabbi Horowitz and the ZBA hearing was set for four months after Rabbi Horowitz submitted the Application. Such delays were irregular for the Town. ECF No. 1 ¶¶ 89-97. The ZBA also refused Rabbi Horowitz' attorney's request that the ZBA adjourn the Hearing until the next scheduled meeting in order to address the concerns raised at the Hearing. This departed from the ZBA's norm of continuing public hearings when other applicants had come before the ZBA. ECF No. 1 ¶¶ 130-136; Churgin Dec. ¶¶ 4-6. It also demonstrated its responsiveness to local residents–for whom there are significant allegations of historic antisemitic animus, ECF No. 1 ¶¶ 180-186–when it refused to do so, claiming that it "would not be fair" to them to not vote immediately. ECF No. 21-3 at 17. *See Congregation Rabbinical Coll. of Tartikov, Inc.*, 945 F.3d at 122 ("we cannot say that the district court clearly erred in finding that religious animus was a 'significant factor in the position taken by . . . those to whom the decision-makers were knowingly responsive.'" (citation

22

and footnote omitted)). In fact, the Town admits as much, arguing (by reference to material outside the Complaint) that the other applications for which the ZBA continued public hearings had "no public comment . . . ." DM at 18.

The discriminatory impacts were foreseeable, as the ZBA was informed of the necessity of Plaintiff's addition, and lack of alternatives for Orthodox Jewish prayer in the Town. *See* ECF No. 21-3 at 15-16, 19. Less discriminatory avenues were also available, such as granting the application with conditions, or at the very least granting an adjournment to allow the Plaintiff to attempt to mitigate any concerns.

C.    Exclusions and Limits, 42 U.S.C. § 2000cc(b)(3)(B).

While Defendants correctly state that the purpose of RLUIPA's Exclusions and Limits provision is to "prevent municipalities from broadly limiting where religious entities can locate," DM at 20 (quoting *Congregation Rabbinical College of Tartikov*, 915 F. Supp. 2d at 637), they fail to acknowledge the allegations of the Complaint that support this claim.[3] Local Law 5, coupled with the ZBA's denial, deprives Plaintiff's worship gatherings and other "assemblies of reasonable opportunities to practice their religion, including the use and construction of structures, within" the Town. *Id.* (quoting *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1238 (10th Cir. 2010)).

Plaintiff alleges that Local Law 5's requirement that places of worship be located on State or County roads prevent Orthodox Jews, who cannot drive on the Sabbath, from having reasonable opportunities to practice their religion. "There are no State or County roads within reasonable

---

[3] Most of Defendant's discussion is related to its "standing" argument, which should be rejected for the reasons discussed *supra*. DM at 21-22.

23

walking distance of Rabbi Horowitz's home and the homes of members of the local Orthodox Jewish community, who are forbidden by their religious beliefs from driving on the Sabbath." ECF No. 1 ¶¶ 7, 33-37. *See id.* ¶ 6 (Local Law 5 only permits places of worship on a "small fraction of the total number of roads within the Town"). The community that Rabbi Horowitz prays with is located 0.6 miles away from the nearest such road, without sidewalks, shoulders or streetlights, creating "extremely dangerous" conditions. *Id.* ¶¶ 211-212, 193-196. In fact, it was the Town's intent to prevent places of worship from locating in residential areas, where they are needed by Orthodox Jews. *Id.* ¶¶ 171, 192. *See Bais Brucha Inc. v. Twp. of Toms River*, No. CV213239ZNQRLS, 2024 WL 863698, at *10 (D.N.J. Feb. 29, 2024) ("The undisputed facts here support that the Land Use Regulations unreasonably limited where Plaintiffs could build their *shul*."). These allegations, coupled with the ZBA's denial of a variance (*see* ECF No. 1 ¶¶ 74, 88, 168) state a claim for violation of RLUIPA's Exclusion and Limits provision.

### III. PLAINTIFF'S COMPLAINT STATES A FIRST AMENDMENT FREE EXERCISE CLAIM.

Defendants erroneously argue that the standard for a violation of the Free Exercise Clause is substantially the same as a RLUIPA Substantial Burdens claim. DM at 23. This is incorrect. The Second Circuit has held that "[i]n the context of a § 1983 claim for a violation of the First Amendment, there is no requirement to show that the governmental burden on religious beliefs was 'substantial.'" *Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023); *id.* at 124 ("holding that there is no justification for requiring a plaintiff to make a threshold showing of substantial burden" for government policies that are not neutral and generally applicable); *see also Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022) ("a plaintiff may carry the burden of proving a free exercise violation . . . by showing that a government entity has burdened his sincere religious

24

practice pursuant to a policy that is not "neutral" or "generally applicable"). The outdated authorities cited by the Town are not controlling.

The individualized denial of a zoning application is not a neutral law of general applicability. *See Kennedy*, 597 U.S. at 526 ("A government policy will fail the general applicability requirement if it . . . provides 'a mechanism for individualized exemptions.'" (citation omitted)); *Fulton v. City of Phil.,* 593 U.S. 522, 533 (2021) ("A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'"" (citation omitted)); *Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 512 (S.D.N.Y. 2010) ("A strict scrutiny standard of review is appropriate in situations that involve 'individualized governmental assessment[s]'" and holding that land use application was an individualized assessment (citation omitted)), *aff'd,* 694 F.3d 208 (2d Cir. 2012); *Chabad Lubavitch of Litchfield Cnty.*, 768 F.3d at 193.

Strict scrutiny review (which Defendants fail to address) of the ZBA's decision is therefore required under the Free Exercise Clause, and Defendants offer no additional argument with respect to Plaintiff's Free Exercise claim.

## IV.   PLAINTIFF STATES A FREEDOM OF ASSOCIATION CLAIM.

In evaluating a freedom of association claim, "[t]he first question . . . is whether and to what extent [D]efendants' actions burdened" Plaintiff's right to associate for the purpose of engaging in those activities protected by the First Amendment, *Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007), "such as speech, assembly, redress of grievances, and the exercise of religion," *see NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 472 (S.D.N.Y. 2004). "To be cognizable, the interference with associational rights must be direct and substantial or significant,"

25

rather than simply "make it more difficult" for Plaintiffs "to exercise their freedom of association." *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996) (internal quotation marks omitted). Plaintiff meets this burden here, as the Complaint alleges that Rabbi Horowitz sincerely believes that he must provide a location to lead prayers for Jews that live in his community and that this location must be within walking distance of the attendees, and that the current layout and size of Rabbi Horowitz' home imposes significant burdens on his religious exercise and on those who pray with him. ECF No. 1 ¶¶ 37, 43-46. The Complaint sufficiently alleges that Defendants' interference with associational rights is direct and substantial.

## V.    PLAINTIFF STATES AN EQUAL PROTECTION CLAIM.

The Second Circuit has held that the standard for establishing a violation of RLUIPA's Nondiscrimination provision is the same as under the Fourteenth Amendment's Equal Protection Clause. *Chabad Lubavitch of Litchfield Cnty.*, 768 F.3d at 198. Therefore, for the same reasons discussed in Section II(B), Defendants' argument that Plaintiff fails to state an Equal Protection claim must fail.

## VI.    THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S ARTICLE 78 CLAIM.

The Court has supplemental jurisdiction over Count VII, brought pursuant to New York Civil Practice Law and Rules Article 78. In a similar case involving RLUIPA claims and intertwined analysis between the state and federal claims, this Court held that it "has independent authority to address WDS's claim that the ZBA's decision was arbitrary and capricious in its exercise of supplemental jurisdiction as governed by New York law and N.Y.C.P.L.R. § 7801 et seq., pursuant to 28 U.S.C. § 1367." *Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp.

26

2d 477, 560 (S.D.N.Y. 2006), *aff'd*, 504 F.3d 338 (2d Cir. 2007).  Similarly, here, Plaintiff's RLUIPA claims are also implicated by the arbitrary nature of the ZBA's decision, as described above.[4]

## CONCLUSION

Based upon the foregoing. Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss.

Dated:  Nanuet, New York
        May 18, 2026

                                        __/s/ *Joseph Churgin*_____
                                        Joseph A. Churgin (JC 6854)
                                        Donna Sobel (DS 3267)
                                        Savad Churgin
                                        55 Old Turnpike Road, Suite 209
                                        Nanuet, New York 10954

                                        Roman P. Storzer (admitted *pro hac vice*)
                                        Storzer & Greene, P.L.L.C.
                                        1025 Connecticut Avenue, N.W., Suite 1000
                                        Washington, D.C. 20036

                                        *Attorneys for Plaintiff*

---

[4] Defendants make a perfunctory statement without analysis that Plaintiff fails to state a claim, which should be rejected outright. *See also* ECF No. 1 ¶¶ 153-168 (alleging facts supporting Plaintiff's Article 78 claim, not addressed by Defendants).